# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HARRIS JOHN KLINGENBERG,

Defendant-Appellant.

UNPUBLISHED
August 18, 2015

No. 319534
Allegan Circuit Court
LC No. 12-017911-FH

Before: METER, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Defendant Harris John Klingenberg appeals as of right his convictions and sentences for two counts of second-degree criminal sexual conduct (CSC) (victim under 13 years of age), MCL 750.520c(1)(a). The trial court sentenced him to two concurrent terms of 57 months to 15 years in prison. We affirm defendant's convictions but remand for a reconsideration of defendant's sentences in light of *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (2015) (Docket No. 149073).

This case arose out of allegations that on numerous occasions defendant touched the breasts and vagina of the victim. Defendant first argues that his convictions were against the great weight of the evidence because this case was a credibility contest, and the victim's credibility was repeatedly undermined at trial. "A verdict is against the great weight of the evidence if the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow it to stand." *People v Reid (On Remand)*, 292 Mich App 508, 513; 810 NW2d 391 (2011). "Conflicting testimony and questions of witness credibility are generally insufficient grounds for granting a new trial." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). A "judge may not repudiate a jury verdict on the ground that he disbelieves the testimony of witnesses for the prevailing party," and "absent exceptional circumstances, issues of witness credibility are for the jury . . . ." *People v Lemmon*, 456 Mich 625, 636, 642; 576 NW2d 129 (1998) (citation and quotation marks omitted). Exceptional circumstances exist, in relevant part, when a witness's testimony has been seriously impeached so that the case is marked by uncertainties and discrepancies. *Id.* at 643-644.

No exceptional circumstances existed in this case. While the victim wrote letters recanting her allegations and attributing them to dreams, this fact did not eviscerate the victim's credibility. The record supports that the victim's behavior was consistent with the behavior of a child who had been sexually abused. Further, the fact that the victim had extensive,

-1-

undocumented exposure to her mother, which included multiple discussions about the allegations, did not undermine the credibility of the victim. Testimony revealed that the victim's mother questioned the victim's allegations and that the nature of the victim's interaction with her mother was likely to cause the victim to recant her allegations, rather than reaffirm allegations that were allegedly false. Additionally, the record does not support defendant's argument that the victim's credibility was undermined because she was exposed to other instances of sexual abuse experienced by other family members. In fact, no testimony supported that the victim knew about her cousin's abuse.[1] The record also does not support defendant's argument that the victim's testimony lacked credibility because she testified in a manner inconsistent with the testimony of her mother and defendant. The allegedly inconsistent testimony concerned an argument among the victim, her mother, and defendant on the night of the victim's disclosure. The victim did not testify that the argument did not happen; she testified that she could not recall it. In addition, defense counsel asked the victim if she had an argument or "blow up" with *defendant*, but based on other testimony, the argument was primarily between the victim and her *mother*. In addition, based on the testimony, the argument was of an ordinary nature and not likely to be considered a "blow up" by the victim. Moreover, defendant does not cite to any portion of the transcript to support his argument that the credibility of the victim was undermined because her trial testimony was based on leading questions by the prosecution, and defendant has abandoned this argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000); *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001).

There simply were no exceptional circumstances in this case that would take the issue of the victim's credibility outside of the province of the jury. *Lemmon*, 456 Mich at 642.

Additionally, we note that the evidence did not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow it to stand. *Reid (On Remand)*, 292 Mich App at 513. The relevant elements of second-degree CSC are: (1) a person engaged in sexual contact with another person and (2) the other person was under 13 years of age. MCL 750.520c(1)(a). A victim's testimony is sufficient on its own to support a conviction for CSC. *People v Phelps*, 288 Mich App 123, 132; 791 NW2d 732 (2010); MCL 750.520h. The victim did not waver in her testimony that defendant repeatedly, intentionally touched her intimate parts (specifically her breasts and her vagina), or the clothing covering the immediate area of these intimate parts, and that the assaults occurred when nobody else was present, in locations such as a bedroom and a barn, and that on at least one occasion, defendant used his penis to touch the victim. In addition, the victim also testified that she was 10 years old at the time these assaults occurred. This testimony was sufficient to support defendant's conviction for two counts of second-degree CSC.

Defendant also argues that several evidentiary errors require reversal. We disagree. Relevant evidence is generally admissible, but evidence that is not relevant is not admissible. MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would

---

[1] A doctor merely testified that the mother "thought that maybe" the victim had learned about the situation with the cousin.

be without the evidence." MRE 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

First, the trial court properly prohibited defendant from asking the victim's mother if the victim's deceased biological father had sexually assaulted the victim. For this testimony to be admissible, defendant was first obligated to make an offer of proof regarding the proposed testimony and to demonstrate its relevance. *People v Byrne*, 199 Mich App 674, 678; 502 NW2d 386 (1993). To establish relevance, "[a]t a minimum," defendant "would have to establish that the sexual conduct of which he is accused is highly similar to that charged against the victim's father. . . . [I]f the father engaged only in relatively dissimilar sexual conduct, the evidence would be inadmissible as irrelevant . . . ." *Id.* at 679. Here, defendant did not offer evidence or testimony to support that the victim was abused by her biological father. Absent a sufficient showing of relevancy in the offer of proof, the trial court properly excluded this line of questioning. *Id.* at 678.

Second, the trial court properly excluded testimony that it was not within defendant's character to sexually abuse a child. MRE 404(a)(1) provides that evidence of a "pertinent trait of character" is admissible if offered by a defendant. Pursuant to this court rule, a criminal defendant has "an absolute right to introduce evidence of his character to prove that he could not have committed the crime." *People v King*, 297 Mich App 465, 478; 824 NW2d 258 (2012) (citation and quotation marks omitted). However, in the present case, defendant's lay witness was not qualified to testify with regard to whether defendant's character included the propensity to "sexually abuse a child." MRE 701; see also, generally, *People v Dobek*, 274 Mich App 58, 92-104; 732 NW2d 546 (2007). We also note that evidence that it was not within defendant's character to abuse a child was introduced through the testimony of another witness; the prosecutor lodged no objection to this testimony.

Third, the trial court properly excluded testimony from one of defendant's character witnesses regarding the witness's observations of defendant interacting with his biological children under the supervision of Child Protective Services (CPS). Defendant had sexual conduct with the victim when they were alone and in relatively secluded locations such as a bedroom or a barn. In contrast, the proposed testimony regarded defendant's interactions with his biological children while they were in a public place being supervised by an individual designated by CPS. The proposed testimony was irrelevant to what defendant did to the victim when alone and secluded. MRE 401.[2]

---

[2] In addition, defendant appears to be arguing that the trial court's ruling was arbitrary because the trial court permitted similar testimony from another witness. Defendant's argument is inappropriately nonspecific, but he appears to be referring to the testimony of Ana Guillen-Perez. The prosecution did not object to the other witness's testimony, so the trial court did not rule on the issue. Defendant has failed to establish a factual predicate for his argument regarding arbitrariness. *Elston*, 462 Mich at 762.

Fourth, we agree with defendant that prosecution expert Dr. Sarah Brown improperly testified that it was "likely" that the victim was actually sexually abused. This was a plain evidentiary error. *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857, amended 450 Mich 1212 (1995) (upholding *People v Beckley*, 434 Mich 691; 456 NW2d 391 (1990), and stating that "an expert may not testify that the sexual abuse occurred"). However, this plain error does not require reversal because the record does not support a finding that this error affected the outcome of the lower court proceedings. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Specifically, part of Dr. Brown's testimony (regarding the victim's alleged "dream" about the incidents) actually served to question the victim's credibility; defendant was able to cross-examine Dr. Brown and attempt to cast doubt on her conclusions by pointing out how little time she had spent with the victim; and other, proper testimony corroborated the victim's testimony. Therefore, the impact of Dr. Brown's improper testimony was minimal at best. See, generally, *Peterson*, 450 Mich at 378-379. In addition, there was substantial evidence to convict defendant; the error in the admission of Dr. Brown's testimony was harmless. *Id*. at 381.

Finally, although the prosecution briefly commented on the improper testimony of Dr. Brown during closing arguments, the testimony referenced by the prosecution came in as evidence at trial without objection. Therefore, the prosecution was properly commenting on evidence that was admitted at trial. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). Further, the trial court instructed the jury that it must decide the case based only on the evidence admitted in the trial and that the arguments of the attorneys were not evidence. *Dobek*, 274 Mich App at 66 n 3.

Defendant also argues that his trial counsel was ineffective when he failed to object to Dr. Brown's testimony that it was likely that the victim was sexually abused. Pursuant to the constitutions of the United States and Michigan, a criminal defendant has "the fundamental right to effective assistance of counsel." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), citing US Const, Am VI, and Const 1963, art 1, § 20. A defendant has the burden of proving ineffective assistance of trial counsel, and to do so, "the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *Heft*, 299 Mich App at 80-81. To establish that he was prejudiced, a defendant must show that "but for defense counsel's errors, the result of the proceeding would have been different." *Id*. at 81.

Admission of Dr. Brown's testimony that it was likely that the victim was sexually abused was erroneous, and thus, we find that defense counsel's performance fell below an objective standard of reasonableness when he allowed this testimony without objection. However, defendant has not demonstrated that there is a reasonable probability that trial counsel's deficient performance prejudiced him. *Id*. The impact of the improper testimony was minimal, and the record contained ample evidence for the jury to find that defendant committed the charged offenses. Defendant has not shown that "but for defense counsel's errors, the result of the proceeding would have been different." *Heft*, 299 Mich App at 81. Reversal is unwarranted.

Next, defendant argues that the trial court improperly assessed 25 points for sentencing offense variable (OV) 13 (continuing pattern of criminal behavior), MCL 777.43. Pursuant to MCL 777.43(1)(c), 25 points are to be assessed for OV 13 if the offense was part of a pattern of felonious criminal activity involving three or more crimes against a person. Defendant does not specifically dispute that evidence was admitted at trial that could support a finding that he committed three or more felonious crimes against the victim. However, he challenges the score because all of the facts supporting this score were not decided by the jury. Defendant specifically argues that "[t]his issue should be resolved based upon the Supreme Court's decision in *Lockridge*, *supra*."[3] We agree that *Lockridge* affects the present case in that, according to *Lockridge*, the sentencing guidelines range, when calculated with "judge-found facts," are now considered to be merely advisory. See *Lockridge*, ___ Mich App at ___; slip op at 28-29 and 29 n 28.[4] We thus remand this case for the sentencing court to reconsider its sentencing decision in accordance with the procedures laid out in *Lockridge*. See, e.g., *id.*, slip op at 34-36.

In addition, defendant argues that the trial court incorrectly assessed two points for prior record variable (PRV) 5 (prior misdemeanor convictions), MCL 777.55. Pursuant to MCL 777.55(1)(e), two points are to be assessed for PRV 5 if "[t]he offender has 1 prior misdemeanor conviction or prior misdemeanor juvenile adjudication." Defendant challenges the score because the trial court relied on the Judicial Data Warehouse to confirm this misdemeanor conviction. However, the trial court did not rely exclusively on the Judicial Data Warehouse to determine that defendant had a misdemeanor conviction. The Presentence Investigation Report (PSIR) indicated that defendant pleaded to a misdemeanor in 2003, and "[a] court may rely on the contents of a PSIR in calculating the guidelines." *People v Nix*, 301 Mich App 195, 205 n 3; 836 NW2d 224 (2013). Therefore, the trial court properly assessed two points for PRV 5. In addition, we note that even if zero points were to be assessed for PRV 5, defendant's PRV level would remain at level C. See MCL 777.64. As stated above, the court must reconsider its sentencing decision using the procedures set forth in *Lockridge*. See *Lockridge*, ___ Mich App at ___; slip op at 34-36.

Defendant's convictions are affirmed but this case is remanded for a reconsideration of the sentences imposed. We do not retain jurisdiction.


/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Mark T. Boonstra

---

[3] *Lockridge* had not been decided at the time defendant filed his brief, although the Supreme Court had granted leave in the case.

[4] We note that if zero points were to be assessed for OV 13, defendant's guidelines range would change. See, generally, MCL 777.64.