PEOPLE v HEFT

Docket No. 307150. Submitted December 11, 2012, at Lansing. Decided December 20, 2012, at 9:10 a.m. Leave to appeal sought.

Leonard J. Heft was convicted by a jury in the Saginaw Circuit Court, Fred L. Borchard, J., of entering without breaking with the intent to commit a felony or larceny therein, MCL 750.111, and conspiracy to commit entering without breaking with the intent to commit a felony or larceny therein, MCL 750.157a. Defendant appealed, arguing in part that the court had erred by failing to instruct the jury on entering without permission, MCL 750.115, as a lesser included offense.

The Court of Appeals *held*:

1. There are two elements that must be proved when the prosecution charges a person under MCL 750.115(1) with entering a dwelling or certain structures without breaking without permission: (1) entering without breaking and (2) entering without the owner's permission.

2. There are two elements that must be proved when the prosecution charges a person under MCL 750.111 with entering a dwelling or certain structures without breaking with the intent to commit a felony or larceny therein: (1) entering a building or structure without breaking and (2) having the intent to commit a felony or larceny therein when entering.

3. Entering without breaking without permission is not a lesser included offense of entering without breaking with the intent to commit a felony or larceny therein because the elements of the latter crime do not entirely subsume the elements of the former crime.

4. When dealing with a crime that includes alternative elements, a court must examine only the specific elements necessary to the defendant's charge in the case. The lesser offense of entering without breaking without permission contains an additional element (the lack of permission) that is not necessary to prove entering without breaking with the intent to commit a felony or larceny therein. The trial court did not err when it refused to instruct the jury on entering

without permission as a lesser included offense of entering without breaking with the intent to commit a felony or larceny therein.

5. Defendant failed to show that if the police had photographed certain footprints in the snow at the crime scene, the resulting photographic evidence would have exonerated him. Defendant failed to demonstrate that the state, in bad faith, failed to preserve material evidence that might have exonerated him. Defendant's due process rights were not violated.

6. A defendant is prejudiced as a result of defense counsel's errors when, but for defense counsel's errors, the result of the proceeding would have been different.

7. Defense counsel is not required to make objections that have no merit. Defendant's counsel was not ineffective as a result of failing to move to dismiss the charges on the bases of the state's failure to take and preserve photographs of the footprints in the snow or to object to certain testimony by police officers that did not contain improper opinions about defendant's guilt. Defendant failed to overcome the strong presumption that his counsel's failure to object to certain testimony by the police officers was sound trial strategy. There is no indication that counsel's failure to challenge the statements prejudiced the outcome of the trial.

Affirmed.

1. CRIMINAL LAW — ENTERING WITHOUT PERMISSION — ENTERING WITHOUT BREAKING WITH INTENT TO COMMIT LARCENY OR FELONY — LESSER INCLUDED OFFENSES.

The offense of entering a dwelling or certain structures without permission is not a lesser included offense of entering a dwelling or certain structures without breaking with the intent to commit a felony or larceny therein (MCL 750.111; MCL 750.115[1]).

2. CONSTITUTIONAL LAW — DUE PROCESS — EVIDENCE — FAILURE TO PRESERVE MATERIAL EVIDENCE.

A criminal defendant can show that the state violated his or her due process rights under the Fourteenth Amendment by showing that the state, in bad faith, failed to preserve material evidence that might have exonerated the defendant; if the defendant cannot show bad faith by the state or that the evidence was potentially exculpatory, the state's failure to preserve evidence does not deny the defendant due process.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Michael D. Thomas*, Prosecuting Attorney, and *Randy L. Price*, Assistant Prosecuting Attorney, for the people.

State Appellate Defendant (by *Randy E. Davidson*) for defendant.

Before: WHITBECK, P.J., and FITZGERALD and BECKERING, JJ.

PER CURIAM. Defendant, Leonard Heft, appeals as of right his convictions, following a jury trial, of entering without breaking with intent to commit a larceny (entering with intent to commit a larceny)[1] and conspiracy to commit entering with intent to commit a larceny (conspiracy).[2] We affirm.

I. FACTS

A. BACKGROUND FACTS

Jessie Chavez testified that at 1:30 a.m. on January 24, 2011, he heard pounding noises that he believed were coming from his home at 214 Cambrey. His mother called 911, and Saginaw Police Officers Mark Walker and Jeffery Madaj responded to the dispatch. Officer Walker testified that he noticed that two people in the area were running but then began walking, which he considered suspicious. Officers Walker and Madaj made contact with the individuals (Heft and Adam Kinville), separated them, and seated them in the patrol vehicles while they investigated.

Officer Walker testified that Heft told him that he was just walking around and that he and Kinville had walked

---

[1] MCL 750.111.

[2] MCL 750.157a.

there from Cronk Street. Officer Walker testified that, because Cronk Street was several miles from Cambrey, it was 1:30 a.m., and the temperature was about zero degrees but Heft was breathing hard and perspiring, he "felt like something was not right." Officer Madaj questioned Kinville and, on the basis of Kinville's statement and the same facts, determined that Kinville was not being truthful. Officers Walker and Madaj both testified that they found footprints in the snow and traced them back to 220 Cambrey, the house next door to 214 Cambrey. Officer Walker testified that he compared Heft's boots to the footprints and thought the boots could have made them.

The door on the house at 220 Cambrey was broken. Inside, the officers saw freshly tracked snow, a pile of heating registers, and that the hot water heater had been broken off from the pantry. The officers testified that they could not tell when the registers or heater had been broken. Several witnesses testified that Kinville had resided at 220 Cambrey at some point, but Chavez testified that the house had been vacant for four to six months before January 2011. Chavez testified that he had been inside the house while it was vacant and had been able to just "walk right in."

Officer Madaj testified that Kinville later stated that he had gone into the house to check on it because his grandfather owned it. Officer Walker testified that Heft stated that he had walked up to the door but had not entered the house.

Kinville eventually told Officer Madaj that his vehicle was parked around the corner, and the officers discovered a van parked about one block away. Heft possessed the van's keys and it was registered in his name. Officer Madaj testified that the van contained flooring tools, which a person could use to acquire scrap metal for sale.

### B. JURY INSTRUCTIONS AND VERDICT

Kinville's counsel requested that the trial court instruct the jury on entering without permission[3] as a lesser included offense of entering with intent to commit a larceny, and Heft's counsel joined in the request. The trial court declined to issue the instruction. The jury found Heft guilty of entering with intent to commit a larceny and conspiracy. Heft now appeals. The jury found Kinville guilty of the same crimes, but he is not a party to this appeal.

### II. LESSER INCLUDED OFFENSES

#### A. STANDARD OF REVIEW

This Court reviews de novo questions of law, including whether an offense is a lesser included offense and whether an instructional error violated a defendant's due process rights under the Fourteenth Amendment.[4]

#### B. LEGAL STANDARDS

The trier of fact may find a defendant guilty of a lesser offense if the lesser offense is necessarily included in a greater offense.[5] If the trial court does not instruct the jury on a lesser included offense, the error requires reversal if the evidence at trial clearly supported the instruction.[6]

---

[3] MCL 750.115.

[4] *People v Wilder*, 485 Mich 35, 40; 780 NW2d 265 (2010).

[5] MCL 768.32(1); *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002); *Wilder*, 485 Mich at 41.

[6] *People v Silver*, 466 Mich 386, 388; 646 NW2d 150 (2002) (opinion by TAYLOR, J.).

However, the trier of fact may only consider offenses that are "inferior to the greater offense charged."[7] The trier of fact may *not* consider cognate offenses: those offenses that contain an element not found in the greater offense.[8] To be a lesser included offense, the elements necessary for commission of the greater offense must subsume the elements necessary for commission of the lesser offense.[9] The elements of the lesser offense are subsumed when "*all* the elements of the lesser offense are included in the greater offense . . . ."[10]

### C. STATUTORY LANGUAGE

Under MCL 750.111, it is a crime for a person to enter a variety of locations with the intent to commit larceny:

> Any person who, without breaking, enters any dwelling, house, . . . or structure used or kept for public or private use, or any private apartment therein, with intent to commit a felony or any larceny therein, is guilty of a felony . . . .

Thus, the crime has two elements: (1) entering a building or structure without breaking and (2) having the intent to commit a larceny therein when entering.

Under MCL 750.115(1), it is a crime for a person to enter a variety of private locations without permission from the owner:

> Any person who, without breaking, enters any dwelling, house, . . . or structure used or kept whether occupied or unoccupied, without first obtaining permission to enter

---

[7] *Cornell*, 466 Mich at 354.

[8] *Id.* at 355.

[9] *Wilder*, 485 Mich at 41.

[10] *People v Mendoza*, 468 Mich 527, 533; 664 NW2d 685 (2003) (emphasis added); see *People v Smith*, 478 Mich 64, 70-71; 731 NW2d 411 (2007).

> from the owner or occupant, agent, or person having immediate control thereof, is guilty of a misdemeanor.

Thus, when the prosecution charges a person under MCL 750.115(1) with entering without breaking without permission, the crime has two elements: (1) entering without breaking and (2) entering without the owner's permission.

### D. APPLYING THE STANDARDS

We conclude that entering without permission is not a lesser included offense of entering with the intent to commit a larceny. The elements of entering with intent to commit a larceny do not entirely subsume the elements of entering without permission.

Heft argues that, because entering without permission is necessarily included in breaking and entering with intent to commit larceny,[11] entering without permission is necessarily included in entering with intent to commit larceny. We disagree. When dealing with a crime that includes alternative elements, this Court must be careful to examine *only* the specific elements necessary to the defendant's charge in our case.[12] When we consider only those elements necessary for a defendant to commit entering without breaking, we must reject Heft's argument.

In *People v Cornell*, the Michigan Supreme Court held that breaking and entering without permission is necessarily included in breaking and entering with intent to commit larceny.[13] We must distinguish the Court's decision in *Cornell* because it expressly concerned a situation in which the prosecution charged the

---

[11] See *Cornell*, 466 Mich at 360.

[12] *Wilder*, 485 Mich at 44-45.

[13] *Cornell*, 466 Mich at 360.

defendant with "breaking and entering," not merely entering.[14] A breaking is any use of force, however slight, to access whatever the defendant is entering.[15] As noted in *People v Toole*, cited in *Cornell*, "[t]here is no breaking if the defendant had the right to enter the building."[16] Thus, a breaking only exists if the defendant entered *without permission*: "breaking and entering" subsumes the "without permission" element of "entering without permission" because a person cannot commit a breaking with permission. However, simply entering does not subsume this element.

When determining whether the elements of one crime are subsumed in another, " '[t]he controlling factor is whether the lesser offense can be proved by the same facts that are used to establish the charged offense.' "[17] The lesser offense of entering without permission contains an additional element—the lack of permission—on which the prosecution would have to prove additional facts that are not necessary for the prosecution to prove entering with intent to commit a larceny. Indeed, the defendants' theories of this case were inconsistent with entering without permission.

Kinville's theory of the case was that, as he told the officers at the scene, he was checking on his grandfather's house, he believed that his grandfather owned the house, he used to live in the house, he noticed that the door was open, and he went into the house to determine if everything was okay. Heft's attorney also argued in closing that there was no evidence that Heft

---

[14] *Id.*

[15] *People v White*, 153 Mich 617, 620; 117 NW 161 (1908); *People v Wise*, 134 Mich App 82, 88; 351 NW2d 255 (1984).

[16] *People v Toole*, 227 Mich App 656, 659; 576 NW2d 441 (1998).

[17] *Cornell*, 466 Mich at 354, quoting *People v Torres (On Remand)*, 222 Mich App 411, 420; 564 NW2d 149 (1997).

and Kinville knew that the property was vacant before they entered it and that Heft was aware that Kinville had lived at the property because Kinville's wife is Heft's sister. The prosecution was not required to prove that Heft and Kinville did not have permission to enter the house to prove entering with intent to commit larceny, but would have been required to prove that Heft and Kinville did not have permission to enter the house to prove entering without permission.

Further, for an offense to be a lesser included offense, " ' "proof of the element or elements differentiating the two crimes must be sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense." ' "[18] Breaking and entering subsumes entering without permission because "[i]t is impossible to commit the greater offense without first committing the lesser offense."[19] The opposite is true in this case. When faced with a factual situation in which a defendant entered a home *with* permission, a jury could find the defendant guilty of entering with the intent to commit a larceny, but innocent of entering without permission.[20] Here, unlike with breaking and entering, it is not impossible to commit the greater offense without first committing the lesser offense.

Heft argues that entering without permission is a lesser included offense of home invasion, but this is also

---

[18] *Cornell*, 466 Mich at 352, quoting *People v Stephens*, 416 Mich 252, 263; 330 NW2d 675 (1982), quoting *United States v Whitaker*, 144 US App DC 344, 347; 447 F2d 314 (1971).

[19] *Cornell*, 466 Mich at 361; *Smith*, 478 Mich at 71, 74.

[20] See *People v St Lawrence*, unpublished opinion per curiam of the Court of Appeals, issued August 16, 2007 (Docket No. 268639), p 2, in which we concluded that the defendant was properly convicted of entering with intent to commit a larceny when the defendant entered a resort building with permission.

inapplicable. In *People v Silver*, the Michigan Supreme Court held that breaking and entering without permission is a lesser included offense of first-degree home invasion.[21] "Entering without permission" is an alternative element of any degree of home invasion, under which the trier of fact can find the defendant guilty of home invasion for entering without permission with a variety of aggravating circumstances.[22] Thus, home invasion subsumes the "without permission" element of entering without permission. As stated above, that element is not subsumed here.

We conclude that under the elements applicable to this case, the trial court did not err when it refused to instruct the jury on entering without permission because entering without permission is not a lesser included offense of entering (without breaking) with the intent to commit a larceny.

### III. EXCULPATORY EVIDENCE

#### A. STANDARD OF REVIEW AND ISSUE PRESERVATION

A defendant must raise an issue in the trial court to preserve it for our review.[23] Heft did not challenge the state's alleged failure to preserve exculpatory evidence in the trial court. Thus, this issue is unpreserved. This Court reviews unpreserved issues alleging constitutional error for plain error affecting a defendant's substantial rights.[24] Plain error affected the defendant's

---

[21] *Silver*, 466 Mich at 392 (opinion by TAYLOR, J.); *id.* at 394-395 (opinion by KELLY, J.).

[22] MCL 750.110a.

[23] *People v Dupree*, 486 Mich 693, 703; 788 NW2d 399 (2010).

[24] *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

substantial rights if (1) there was an error, (2) the error was clear or obvious, and (3) the error prejudiced the defendant.[25]

## B. LEGAL STANDARDS

A criminal defendant can demonstrate that the state violated his or her due process rights under the Fourteenth Amendment if the state, in bad faith, failed to preserve material evidence that might have exonerated the defendant.[26] However, "[t]he prosecutor's office is not required to undertake discovery on behalf of a defendant."[27] If the defendant cannot show bad faith or that the evidence was potentially exculpatory, the state's failure to preserve evidence does not deny the defendant due process.[28]

## C. APPLYING THE STANDARDS

Heft argues that the state violated his due process rights when the police failed to photograph the tread pattern of the footprints in the snow leading away from 220 Cambrey. We disagree. The defendant must show that the evidence might have exonerated him or her.[29] Even assuming for the purposes of argument that the police maliciously failed to photograph the footprints in the snow, Heft told Officer Walker that he had walked up to 220 Cambrey. Therefore, Heft's footprints would have been in the snow whether he committed the charged crime or not. Thus, Heft has failed to demon-

[25] *Id.* at 763.

[26] *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988); *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007).

[27] *People v Leo*, 188 Mich App 417, 427; 470 NW2d 423 (1991).

[28] *Youngblood*, 488 US at 57-58.

[29] *Hanks*, 276 Mich App at 95-96.

strate that a photograph of the footprints would have exonerated him. We conclude that Heft has not demonstrated a clear error because he has not shown that the police failed to preserve exculpatory evidence.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

#### A. STANDARD OF REVIEW

Generally, whether a defendant had the effective assistance of counsel "is a mixed question of fact and constitutional law."[30] This Court reviews findings of fact for clear error and questions of law de novo.[31] But a defendant must move in the trial court for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective.[32] When a defendant did not move in the trial court for a new trial or an evidentiary hearing, this Court's review is limited to mistakes apparent from the record.[33]

#### B. LEGAL STANDARDS

A criminal defendant has the fundamental right to effective assistance of counsel.[34] However, it is the defendant's burden to prove that counsel did not provide effective assistance.[35] To prove that defense counsel was not effective, the defendant must show that (1)

---

[30] *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

[31] *Id.*

[32] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973); *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007).

[33] *People v Hoag*, 460 Mich 1, 7; 594 NW2d 57 (1999); *Odom*, 276 Mich App at 415.

[34] US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984).

[35] *Ginther*, 390 Mich at 442-443; *Odom*, 276 Mich App at 415.

defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant.[36] The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different.[37]

## C. FAILURE TO MOVE FOR DISMISSAL

Heft argues that defense counsel was ineffective because he failed to move in the trial court to dismiss the charges against him on the ground that the police had failed to preserve the footprint evidence. Defense counsel is not required to make meritless motions.[38] Because we have concluded that this evidence was not exculpatory, it does not provide the basis for such a motion. Thus, we reject this argument.

## D. EXPRESSION OF GUILT

Heft argues that his trial counsel was ineffective because he failed to object when the officers improperly opined about his guilt. A witness may not opine about the defendant's guilt or innocence in a criminal case.[39] Officer Walker testified in response to the prosecution's questioning as follows:

> *Q.* Did [Heft's] explanation make sense to you of what they were doing?

---

[36] *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994).

[37] *Pickens*, 446 Mich at 312.

[38] *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011).

[39] *People v Row*, 135 Mich 505, 506-507; 98 NW 13 (1904); *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985).

*A.* Not at all.

*Q.* Why is that?

*A.* It was about zero degrees, 1:30 in the morning. I didn't want to be out even though I had to, so it—them just walking around at 1:30 in the morning with it almost below zero just did not make sense. They were—while [Heft], I did speak with him, he was breathing hard, he was perspiring, and so that made me feel like something was afoot, something was not right.

Officer Madaj testified in response to the prosecution's questioning as follows:

*A.* [Kinville] said that he and [Heft] were out for a walk, and they had came from, I believe it was, Cronk Street, which Cronk Street, is it's on the northwest side of the city almost to the city limits. It's—I'm just going to take a stab at it. It's probably four miles as the crow flies north, maybe a little bit less.

*Q.* So that's quite a ways away?

*A.* Yes.

*Q.* It's zero degrees out?

*A.* Yes.

*Q.* It's 1:30 in the morning?

*A.* Yes.

*Q.* In the dead of winter?

*A.* Yes.

*Q.* Did that seem reasonable to you?

*A.* No it did not.

*Q.* What did you do based on the fact he made that statement?

*A.* Based on his statement and the culmination of loud banging noises coming from the—the neighbor had reported, I didn't think that he was being truthful, so I had him have a seat in the rear of my vehicle.

The testimony of the officers here was not similar to statements that we have concluded are improper opinions about a defendant's guilt.[40] Neither officer testified about Heft's guilt in general. Thus, an objection would have been meritless because a fair reading of the officers' testimony reveals that they did not opine about Heft's guilt but, instead, were explaining the steps of their investigations from their personal perceptions.[41] Defense counsel is not required to make meritless objections.[42] We conclude that defense counsel was not ineffective by failing to challenge these statements.

### E. HEFT'S STATEMENT TO OFFICER WALKER

Heft argues that defense counsel was ineffective when he did not move to suppress Heft's statement to Officer Walker. We conclude that Heft has not overcome the presumption that defense counsel's decision was sound trial strategy. We give defense counsel wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case.[43] To show that defense counsel's performance was objectively unreasonable, the defendant must overcome the strong presumption that defense counsel's decisions constituted sound trial strategy.[44] This Court will not substitute its judgment for that of defense counsel or review decisions with the benefit of hindsight.[45]

Officer Walker testified that Heft told him that he and Kinville had walked to the area from Cronk Street.

---

[40] See *Row*, 135 Mich at 506-507; *Bragdon*, 142 Mich App at 199.

[41] See MRE 701.

[42] *Fonville*, 291 Mich App at 384.

[43] *Pickens*, 446 Mich at 325.

[44] *People v Mitchell*, 454 Mich 145, 156; 560 NW2d 600 (1997); *Odom*, 276 Mich App at 415.

[45] *Odom*, 276 Mich App at 415.

Heft argues that this testimony damaged his case because the jury likely concluded that Heft had lied to the police after hearing Officer Walker testify that he discovered Heft's van one block away. But Heft's statement also included an exculpatory explanation for why Heft and Kinville were in the area, which defense counsel may have wanted the jury to consider because the explanation was consistent with the defense theory of the case. As stated already in this opinion, the defense theory of the case was that Heft and Kinville were simply checking on a house that they believed belonged to Kinville's grandfather. This strategy would not "constitute ineffective assistance of counsel simply because it [did] not work."[46] We conclude that Heft has not overcome the strong presumption that defense counsel's decision not to challenge this testimony constituted sound trial strategy.

Nor is there any indication that defense counsel's failure to challenge these statements prejudiced the outcome of Heft's trial. Even had the officers not testified that Heft and Kinville had said that they had walked from Cronk Street, the officers had validly testified that they had stopped Heft and Kinville at 1:30 a.m. after a neighbor reported loud banging noises, that Heft and Kinville were observed running and were sweaty, that footprints led to the house and snow was tracked inside the house, and that Heft's van contained tools that could be used to obtain scrap metal and was parked one block away. Heft has not demonstrated that it is reasonably likely that the results of the proceedings would have been different if defense counsel had challenged Officer Walker's statement. Because Heft has not overcome the presumption that defense counsel's decision not to challenge the statement constituted

---

[46] *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

sound trial strategy or shown that the admission of the evidence affected the outcome of his proceedings, we conclude that Heft has not shown ineffective assistance of counsel.

### V. CONCLUSION

We conclude that entering without permission is not a lesser included offense of entering without breaking with the intent to commit larceny. We further conclude that Heft has not demonstrated that the police failed to preserve exculpatory evidence or that defense counsel's alleged errors were objectively unreasonable.

We affirm.

WHITBECK, P.J., and FITZGERALD and BECKERING, JJ., concurred.