# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TYLER JOSHUA-DALE VENEMA,

        Defendant-Appellant.

UNPUBLISHED
April 28, 2016

Nos. 325415; 325416
Washtenaw Circuit Court
LC Nos. 13-000839-FC;
           13-000840-FC

Before: SAWYER, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

In Docket No. 325415, defendant appeals as of right from his convictions of armed robbery, MCL 750.529; felon-in-possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. In Docket No. 325416, defendant appeals as of right from his convictions of armed robbery, felon-in-possession of a firearm, and felony-firearm.[1] We affirm.

Defendant challenges his convictions on the ground that his constitutional right against self-incrimination was violated when he was interrogated and his statements were subsequently used at trial. Defendant did not move to suppress his confession or request a *Walker*[2] hearing, and defendant never objected to the admission of his statements. Therefore, defendant's claim is unpreserved. *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). The issue is reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"Both the state and federal constitutions guarantee that no person shall be compelled to be a witness against himself or herself." *People v Cortez (On Remand)*, 299 Mich App 679, 691;

---

[1] Defendant was charged separately for two different armed robberies, one in Ann Arbor and the other in Pittsfield Township. The two cases were considered together in a single bench trial. These cases were consolidated on appeal. *People v Venema*, unpublished order of the Court of Appeals, entered January 29, 2015 (Docket Nos. 325415; 325416).

[2] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

-1-

832 NW2d 1 (2013), citing US Const, Am V; Const 1963, art 1, § 17. "This federal constitutional guarantee was made applicable to the states through the Fourteenth Amendment." *People v Tanner*, 496 Mich 199, 207; 853 NW2d 653 (2014). Article 1, § 17 of the Michigan Constitution does not afford defendants greater protections against self-incrimination than those afforded under the Fifth Amendment. *Id*. at 239. "[C]ustodial interrogation must be preceded by advice to the accused that 'he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" *Cortez (On Remand)*, 299 Mich App at 691, quoting *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). "If a suspect is not afforded *Miranda* warnings before custodial interrogation, 'no evidence obtained as a result of interrogation can be used against him.'" *Tanner*, 496 Mich at 207-208, quoting *Miranda*, 384 US at 479 (citations omitted).

Defendant was arrested by Pittsfield Township Police following an armed robbery of a Pittsfield Township BP gasoline station. This armed robbery matched an armed robbery that occurred two days before in Ann Arbor. The Pittsfield Township Police Department informed the Ann Arbor Police Department that a suspect matching both armed robberies was in its custody. Ann Arbor Police Detective Daniel Iverson went to the Pittsfield Township Public Safety Building to investigate. When Detective Iverson arrived, he asked Pittsfield Township Police Lieutenant McCormick whether defendant had been advised of his *Miranda* warnings. Lieutenant McCormick indicated that he read defendant his *Miranda* warnings, but defendant was non-responsive to all questions, including booking questions. Defendant had not requested an attorney. Detective Iverson entered the interrogation room and began questioning defendant, who did not respond. Eventually defendant was taken from the interrogation room to be fingerprinted and photographed, and Detective Iverson investigated defendant's background.

When defendant was placed in a holding cell after he was fingerprinted and photographed, Detective Iverson entered the holding cell and sat next to defendant on the cell bench. Detective Iverson told defendant he was worried about what would have happened if defendant had been confronted by an armed concealed pistol license holder. Defendant responded, "I don't know what I would have done." This was the first verbal response that defendant made to Detective Iverson's questions. Detective Iverson responded, "Okay. Well, you understand your *Miranda* rights. You've had court before." Defendant answered, "Yes." Detective Iverson then explained each *Miranda* right to defendant, and defendant said that he understood the rights and affirmatively nodded his head as Detective Iverson read. Defendant then confessed to committing both the Pittsfield Township and Ann Arbor robberies.

Defendant argues that he was not properly afforded his right to remain silent and that he did not knowingly, intelligently, and voluntarily waive his right to remain silent. We disagree. The only information on the record before us supports that defendant was provided *Miranda* rights before Detective Iverson questioned him. Defendant sat silent when Lieutenant McCormick provided the initial *Miranda* warning and tried to talk to defendant, and Detective Iverson subsequently questioned defendant. The fact that defendant did not invoke or waive his rights does not prevent the police from lawfully interrogating him following the initial *Miranda* warning. *Berghuis v Thompkins*, 560 US 370, 372; 130 S Ct 2250; 176 L Ed 2d 1098 (2010).

Because defendant was advised of his rights, his subsequent statement to Detective Iverson that he did not "know what I could have done," was an implied waiver of rights, and defendant cannot demonstrate plain error. "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis*, 560 US at 384. The record supports that defendant understood his rights because defendant had previous involvement with the legal system and he stated he understood his *Miranda* rights almost immediately after he made his implied waiver. We find no clear or obvious error exists with respect to the admission of defendant's statement. *Carines*, 460 Mich at 763.

Next, defendant challenges that the *Miranda* warnings given by Detective Iverson were ineffective because they were "mid-stream" *Miranda* warnings. We disagree. The record showed that Lieutenant McCormick advised defendant of his *Miranda* rights; there was no evidence to the contrary. Because of this, the facts in the case are distinguishable from *Missouri v Seibert*, 542 US 600, 604; 124 S Ct 2601; 159 L Ed 2d 643 (2004), on which defendant relies. And, because defendant had already been given his rights, Detective Iverson was not required to reread them to defendant to comply with the constitution. *People v Godoldo*, 158 Mich App 603, 606; 405 NW2d 114 (1986) ("One adequate warning sufficient to comply with the Constitution . . .") (quotation and citation omitted). Detective Iverson's cautious behavior in readvising defendant was not error of any kind. Therefore, defendant's argument that Detective Iverson's *Miranda* warnings were ineffective fails, and defendant cannot show plain error. *Carines*, 460 Mich at 763.

Defendant also challenges his express waiver of the *Miranda* warnings provided by Detective Iverson. Defendant contends that this waiver was not voluntary, knowing and intelligent because of defendant's nonsensical trial testimony, outbursts at his sentencing hearing, mental illness, trouble in school, and his alcohol and marijuana abuse. Defendant's argument is unpersuasive. Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights." *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010). Under the totality of the circumstances, defendant "freely and voluntarily made" his statement to Detective Iverson. *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988). The duration of the detention and questioning was not prolonged. Defendant was experienced with the legal system due to his prior convictions. Three different psychologists examined him and there was evidence that he was found to be mentally competent and may be fabricating mental illness. Moreover, there was no evidence that defendant was abused, threatened, or promised leniency to obtain his statement. Therefore, the record supports that defendant's statements following Detective Iverson's warnings were voluntary.

With respect to whether defendant's waiver was knowing and intelligent, "[t]o knowingly waive *Miranda* rights, a suspect need not understand the ramifications and consequences of choosing to waive or exercise the rights that the police have properly explained to him." *People v Cheatham*, 453 Mich 1, 28; 551 NW2d 355 (1996). Evidence demonstrated that defendant knew that "he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against him," which is all that is required for a waiver to be intelligent. *Id.* at 29. Defendant nodded his head as he was read each right by Detective Iverson and expressly said that he understood his rights. From this evidence, the prosecution

showed that defendant had the requisite intelligence and knowledge to waive his right to remain silent. *Id*. Therefore, defendant cannot show plain error. *Carines*, 460 Mich at 763.

Moreover, even if any of defendant's arguments did show plain error, he has not shown prejudice. Rather, the evidence, even apart from his confessions, overwhelmingly supports a finding of guilt. *Id*.

Affirmed.

/s/ David H. Sawyer
/s/ William B. Murphy
/s/ Amy Ronayne Krause