# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ERLIN JASMANY ORTIZ-REYES,

        Defendant-Appellant.

UNPUBLISHED
September 20, 2016

No. 327258
Wayne Circuit Court
LC No. 14-008553-FC

Before: JANSEN, P.J., and K. F. KELLY and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial conviction for first-degree criminal sexual conduct, MCL 750.520b(1)(a) (victim is under 13 years of age), for which he was sentenced to a term of 25 to 40 years of imprisonment. Defendant's only claim of error on appeal is that he was denied the effective assistance of counsel. Finding no error warranting reversal, we affirm.

## I. BASIC FACTS

Complainant testified that when she was 11 years old she met defendant, who was approximately 20 years old. Complainant believed that defendant was her aunt's boyfriend's roommate. Complainant testified that she and defendant were intimate at his house on at least one occasion. She and defendant would talk frequently on the phone. Eventually, complainant's mother became suspicious about their relationship and filed a police report. Complainant also submitted to a Kids-TALK interview.

Following this initial contact with police, complainant's mother sent her to Puerto Rico to live with her grandparents. At that time, complainant continued to have contact with defendant. She returned home after several months and testified that she and defendant began seeing each other again. They had sex in his car. Her family became suspicious once again, contacted police. Complainant was re-interviewed, at which time she identified defendant. Complainant's statements to police, her Kids-TALK interview and her testimony revealed inconsistencies regarding the type of sex she and defendant had – penis and vaginal or oral – and how many times they had sex, ranging anywhere from one to three times.

In contrast, defendant denied even meeting complainant. He knew her mother, with whom he had a relationship, but otherwise denied sexual contact, or any type of contact, with complainant. He was arrested at work and at that time gave police the wrong name and was

-1-

wearing a shirt with the name "Jorge," which matched a paycheck found at the apartment complainant believed defendant shared with her aunt's boyfriend.

The trial court noted defendant's testimony in which he denied ever knowing or seeing complainant and denied living with the aunt's boyfriend, but deemed defendant's testimony not credible. The trial court acquitted defendant of some counts but ultimately concluded that at least one incident of penile-vaginal intercourse occurred. Defendant was sentenced to 25 to 40 years' imprisonment and now appeals as of right.

## II. ANALYSIS

On appeal, defendant argues he was provided ineffective assistance of trial counsel when defense counsel cross-examined the complainant and then later called the complainant's mother as a witness who only solidified the accusations against defendant. We disagree.

"[A] defendant must move in the trial court for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant did not move for a new trial, nor did he request a *Ginther*[1] hearing. As such, "this Court's review is limited to mistakes apparent from the record." *Id.*

Under both the United States and Michigan constitutions, a criminal defendant has the fundamental right to the effective assistance of counsel. US Const Am VI, Const 1963, art 1. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052, 2065; 80 L Ed 2d 674 (1984). "There is a presumption of effective assistance of counsel, and the burden is on defendant to prove otherwise." *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402, lv den 497 Mich 946 (2014).

"To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. In order to demonstrate that counsel's performance was deficient, the defendant must show that it fell below an objective standard of reasonableness under prevailing professional norms. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003), citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303, 521 NW2d 797 (1994).

Defendant must further affirmatively prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. Therefore, "[a]n error by counsel, even if professionally

---

[1] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

unreasonable, does not warrant setting aside judgment in a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

Defendant claims that counsel was ineffective while cross-examining the complainant. The following exchanges took place regarding the frequency with which complainant and defendant had sex:

*Q*. [by the prosecutor] And how many times did you and the Defendant have sex after you got back from Puerto Rico?

*A*. I don't remember.

*Q*. Was it more than once?

*A*. (No response.)

*Q*. You don't remember?

*A*. (Nodding.)

*Q*. No, okay.

\*\*\*

*Q*. [by defense counsel] And before you went to Puerto Rico, you had sex one time, is that right?

*A*. Yes.

*Q*. And then when you came back from Puerto Rico, you had sex three times, is that right?

*A*. It was like two times.

\*\*\*

*Q*. [by defense counsel] When you were talking to the male police officer who is not Sergeant Ortiz, do you remember telling the male police officer that you had sexual intercourse with my client in the back seat of the car at least six times?

*A*. No.

\*\*\*

*Q*. [by defense counsel] Do you remember being asked these questions and giving this answer, Miss Nunez – Question: About how many times did you say you had sex with him? And did you give this answer – I don't know?

*A*. Yes.

*Q*.  Okay – and this is Miss Tink asking you the question, do you remember that?

*A*.  Yes.

*Q*. And the question – Was it more than five times, and was your answer yes?

*A*.  I don't remember.

*Q*.  Okay.  Were you asked this question by Miss Tink – It was more than five times, was it more than ten times? And was your answer – I really don't remember.

*A*.  I don't.

*Q*.  So, you had no recollection other than the first time, and then at some point you said that it was three times, is that right?

*A*.  No.

Defense counsel had a sound strategy in cross-examining the complainant because the cross-examination revealed various inconsistencies in the complainant's testimony on a variety of matters: where she and defendant would "hang out" and with whom, how often she would visit defendant's house, whether she knew where the defendant lived, the frequency with which she and defendant had sex, and the type of sex she and defendant had.  By illustrating complainant's inconsistencies, defense counsel was able to discount complainant's credibility. The strategy was sound in light of the fact that this was a case of "he said/she said," which made witness credibility, or lack thereof, paramount.

For the same reason, defense counsel's decision to call complainant's mother as a witness was sound strategy as it highlighted the mother's past romantic relationship with defendant and thus a motive for her to lie.  In the absence of concrete evidence of a relationship or any association between complainant and defendant, it was critical that counsel cross-examine complainant and call the mother as a witness to underscore not only the weaknesses in their testimonies but also a potential for dishonesty; this was defense counsel's best strategy as it would diminish their credibility and increase the chance for acquittal.

Because defendant cannot show that defense counsel's tactics fell below the objective standard of reasonableness, it follows that he was not prejudiced by counsel's performance.

Affirmed.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien

-4-