*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

RUKUNDO NDAYISHIMIYE,

       Defendant-Appellant.

UNPUBLISHED
June 29, 2023

No. 361733
Kalamazoo Circuit Court
LC No. 2020-000603-FH

Before: GLEICHER, C.J., and RICK and MALDONADO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of carrying a concealed weapon (CCW), MCL 750.227. We affirm.

## I. FACTUAL BACKGROUND

This case arises from the discovery of a firearm underneath the passenger seat of a car. In the early morning hours of April 12, 2020, police spotted a Kia Sorento pull into an apartment complex parking lot. Several minutes passed without anyone stepping out of the vehicle, at which point the driver pulled up and parked next to a vehicle where an undercover officer was stationed. The officer observed two individuals in the car's front seat and noted that they appeared to be searching for something inside the car. Eventually, the passenger door of the Kia opened, and the officer saw a man dressed entirely in black walk toward the two northeastern buildings of the apartment complex. The officer lost sight of the man and then heard what sounded like a single small-caliber gunshot coming from within the complex. Seconds later, the officer saw the man run toward the Kia and jump in the passenger seat. The officer later testified that while the man was running, "his right arm was held—pinned towards his body and his left arm was freely moving, as if he were holding something in his right arm or pinned along the right side of his body." The man got into the passenger seat of the Kia, and the Kia started driving away.

The officer radioed for backup as the Kia exited the parking lot, and a team of officers initiated a traffic stop just over a mile away from the apartment complex. As one officer was

approaching the car, he saw the passenger reach down toward the floorboard before sitting up again. Both driver and passenger were removed from the car and detained. The driver was identified as Brenton Fischer; defendant was the passenger. The Kia was registered to defendant and one other person with the same last name as defendant. During a search of the vehicle, officers found a small handgun under the passenger seat. The gun was not registered to Fischer or defendant. Following the discovery of the handgun, defendant was arrested and transported to a local jail. After turning defendant over at the jail, the transporting officer discovered three .22 caliber bullet cartridges on the floor in the backseat of his patrol car. A forensic examination of the cartridges indicated that the cartridges matched the ammunition found in the handgun.

Defendant was ultimately charged with one count of CCW and convicted by a jury. He was later sentenced to time served and 12 months of probation. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that he was denied the effective assistance of counsel because defense counsel failed to allow him to testify in his own defense. We disagree.

Defendant failed to preserve this claim by moving for a new trial or a *Ginther*[1] hearing in the trial court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 206 (2012). Our review is thus limited to errors apparent on the existing record. *Id*. Whether defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *Id*. Findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *Id*.

"To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks, brackets, and citation omitted).[2] "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Likewise, to

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] Although Michigan caselaw has long held that the effective assistance of counsel is presumed and that defendants are responsible for proving that counsel's performance was constitutionally deficient, we are cognizant of the historic pitfalls inherent in the state's indigent defense system, as well as the efforts that have been made to address those issues. See, e.g., Jeanette Hauserman, Ph.D, and Lauren Farrell, B.A., *Evaluation of the Michigan Indigent Defense Commission's Minimum Standards for Indigent Defense Services*, available at <https://michiganidc.gov/wp-content/uploads/2022/01/MI-Standards-Final-Report-Urban-Institute.pdf> (accessed June 6, 2023).

establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted).

A defendant has a constitutional right to testify at trial. *People v Simmons*, 140 Mich App 681, 683; 364 NW2d 783 (1985). Regarding that right, this Court has held:

> If the accused expresses a wish to testify at trial, the trial court must grant the request, even over counsel's objection. If the record shows that the trial court prevented defendant from testifying, we will not hesitate to reverse its judgment. On the other hand, if defendant . . . decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived. [*Id*. at 685 (quotation marks and citation omitted).]

"Furthermore, there is no requirement in Michigan that there be an on-the-record waiver of a defendant's right to testify." *People v Spaulding*, 332 Mich App 638, 657; 957 NW2d 843 (2020) (quotation marks and citation omitted).

After the prosecutor rested her case, defense counsel stated, "Your Honor, after consultation with my client, the defense rest[s] and calls no witnesses." Defendant did not voice his disagreement with defense counsel's statement on the record and never made an express wish to testify. In general, "failing to express a wish to testify, if there was an opportunity to do so, is sufficient to 'acquiesce' in trial counsel's decision not to call a defendant to the stand." *Spaulding*, 332 Mich App at 657. Here, by acquiescing to defense counsel's decision not to call any witnesses, defendant waived his right to testify in his own defense. *Simmons*, 140 Mich App at 685. Moreover, defense counsel stated that the defense rested and called no witnesses only after consulting with defendant. Thus, it would appear from the record that defendant agreed with defense counsel's trial strategy in full, including the decision not to call him as defense witness. "The decision to testify or not testify is usually considered a matter of trial strategy which this Court will not disturb on appeal." *People v Johnson*, 168 Mich App 581, 586; 425 NW2d 187 (1988). In light of all the circumstances, defense counsel's trial strategy was within the wide range of professionally competent assistance, and defendant cannot show that counsel's performance fell below an objective standard of reasonableness.

Even assuming defense counsel's failure to let defendant testify constituted deficient performance, defendant has presented no evidence to suggest that the outcome of the trial would have been different if he had been called to testify. Defendant argues that had he testified, he would have explained that he was intoxicated when he was arrested. That, in turn, would explain his presence in the passenger seat of the Kia. It would presumably bolster defendant's claim that he was incapable of acting coherently. However, defendant has not presented an offer of proof to support this assertion, nor did he move for a *Ginther* hearing at any point in the proceedings. *Heft*, 299 Mich App at 80. There is not a reasonable probability that defendant's testimony regarding his alleged intoxication would have resulted in a different outcome. It does nothing to contradict the fact that even if he was intoxicated, defendant was still sitting in the passenger seat where the gun was discovered. See *People v Lane*, 102 Mich App 11, 14-15; 300 NW2d 717 (1980) ("[I]ntoxication is not a defense to the sort of general criminal intent which the knowledge element

of the CCW statute reflects . . . .”). Accordingly, for all these reasons, defendant's ineffective-assistance claim must fail.

## III. *BRADY* VIOLATION

Defendant next argues that the prosecutor violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by failing to disclose the last known location of the driver of the vehicle, Brenton Fischer. We disagree.

In general, “[t]his Court reviews due process claims, such as allegations of a *Brady* violation, de novo.” *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016) (quotation marks and citation omitted). To establish a *Brady* violation, a defendant must show that “(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material.” *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014).

“In assessing the materiality of the evidence, courts are to consider the suppressed evidence collectively, rather than piecemeal.” *Id*. at 151. “[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” *United States v Bagley*, 473 US 667, 668; 105 S Ct 3375; 87 L Ed 2d 481 (1985). Put differently, “[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” *Chenault*, 495 Mich at 157 (quotation marks and citation omitted).

Defendant contends that the prosecutor violated *Brady* by failing to disclose that Fischer could not be located or brought to trial to testify until after trial had begun. Defendant complains that in doing so, his rights under *Brady* were violated by preventing Fischer from offering exculpatory—and therefore, material—testimony. At trial, the prosecutor explained, “I anticipate this officer to testify that the last known place of Brenton Fischer was in a mental inpatient facility, and then after that we have lost contact with them.” Defense counsel also objected to testimony from an investigating officer regarding Fischer's last known whereabouts, arguing that this was new information to the defense. Defendant says that he expected Fischer would testify that he sat in the passenger seat of the Kia at one point on the night they were arrested.

Defendant's argument that the prosecutor suppressed information about Fischer's whereabouts is unavailing. The prosecutor properly complied with its obligations to identify witnesses and aid defendant in locating witnesses in accordance with MCL 767.40a, which states, in relevant part:

> (1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.

> (2) The prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known.

(3) Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.

(4) The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties.

(5) The prosecuting attorney or investigative law enforcement agency shall provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process upon a witness. The request for assistance shall be made in writing by defendant or defense counsel not less than 10 days before the trial of the case or at such other time as the court directs. If the prosecuting attorney objects to a request by the defendant on the grounds that it is unreasonable, the prosecuting attorney shall file a pretrial motion before the court to hold a hearing to determine the reasonableness of the request.

Fischer was identified as a known witness as required by MCL 767.40a(1). The prosecutor filed a timely notice to remove Fischer from the witness list on November 16, 2021, three months before trial. In doing so, the prosecutor complied with her obligations under MCL 767.40a(3), thus negating any suggestion that information about Fischer's whereabouts had been suppressed. Further, defendant could have requested the prosecutor's assistance in locating Fischer until 10 days before trial in accordance with MCL 767.40a(5). At no point did defense counsel ask for help to secure Fischer's appearance in court or make any individual efforts to ensure his appearance. In short, there is no evidence that the prosecutor suppressed Fischer's identity as a potential witness or prevented defendant from procuring him as a witness.

Defendant's argument that the prosecutor suppressed evidence favorable to defendant by failing to secure Fischer's appearance at trial is similarly unavailing. Defendant claims that Fischer would have provided testimony showing that Fischer sat in the passenger seat of the car at one point prior to their arrest, and says that such evidence could have been used to show that the gun under the seat belonged to Fischer, not defendant. However, this information was never suppressed. At the preliminary examination, which took place more than a year before trial, an investigator testified that Fischer "had stated he had been in a seat other than the driver's seat earlier in the night." Therefore, defendant was put on notice that Fischer might have sat in the passenger seat well before trial, and he cannot now argue that the prosecution suppressed this evidence.

The only arguable nondisclosure relates to Fischer's location in the inpatient facility two years before trial. The disclosure of Fischer's location may have proved useful in finding Fischer and ultimately procuring his witness testimony. But again, defendant was aware of Fischer's potential relevance as a witness and chose not to enlist the prosecutor's assistance in locating him and procuring his testimony. In any event, Fischer's location in an inpatient facility is not itself exculpatory or impeachment evidence and thus does not constitute favorable evidence within the second *Brady* factor. See *Chenault*, 495 Mich at 150 ("Evidence is favorable to the defense when it is either exculpatory or impeaching."). Moreover, even if defendant had obtained information

from the prosecutor about Fischer's location, there is no guarantee that he would have been found, or that he would have been willing to testify in defendant's favor.

Regarding the third component of *Brady*—that the evidence is material—defendant argues that Fischer's testimony would have created a strong doubt in the jury's mind regarding who could have possessed the firearm at issue in the case, which could in turn undermine confidence in the outcome of the case. But again, even if Fischer had been called to testify, defendant cannot guarantee that Fischer would have testified in his favor, particularly where doing so could have cast doubt on Fischer's own innocence. Furthermore, even if he had testified in defendant's favor, evidence is only material if there is a reasonable probability that the outcome of the case would have been different had the evidence been disclosed to the defense. *Bagley*, 473 US at 668. We are not convinced that the outcome of the case would have been different here if Fischer had testified that he sat in the passenger seat of the car at one point. The prosecution presented evidence that defendant was sitting in the passenger seat when the car was pulled over, and that an officer saw him bend forward in the passenger seat with his hands near the floorboard or under the seat where the gun was found. Additionally, there was evidence that the car was registered to defendant and another person with his last name, and three .22 caliber bullet cartridges were found on the floor of the patrol car used to transport defendant to jail. Accordingly, defendant has failed to establish that Fischer's testimony would have been material to the case, or that the prosecution violated *Brady*.

## IV. CONCLUSION

Defendant's arguments on appeal lack merit. For the reasons discussed above, we affirm defendant's conviction and sentence.

/s/ Elizabeth L. Gleicher
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado

-6-