*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KYLE ANDREW FOX,

Defendant-Appellant.

UNPUBLISHED
September 14, 2023

No. 359805
Ingham Circuit Court
LC No. 20-000822-FH

Before: GLEICHER, C.J., and JANSEN and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of unlawful imprisonment, MCL 750.349b(1)(c), assault by strangulation, MCL 750.84(1)(b), and domestic violence, MCL 750.81(2), second offense, MCL 750.81(4). The trial court sentenced defendant to serve 24 to 180 months' imprisonment for the unlawful imprisonment conviction, 18 to 120 months' imprisonment for the assault by strangulation conviction, and 93 days in jail for the domestic violence conviction. We affirm.

## I. FACTUAL BACKGROUND

Defendant was charged and convicted in relation to an altercation that he got into with his spouse (complainant) at their Lansing home on October 10, 2020. Both parties agreed at trial that they were intoxicated at the time and were arguing about defendant's desire for a divorce. Both also testified that the argument turned violent and that at one point, the complainant stabbed defendant in the back. Aside from these details, their testimony differed significantly.

The complainant testified that defendant was not supposed to be at the home because a no-contact order was in place as a result of several previous assaults defendant had committed against her. She further testified that defendant had kept her in the home against her will during the days leading up to October 10, 2020, by restraining her in their bedroom. If she tried to leave, defendant would drag her upstairs by her hair. The complainant explained that on October 10, she tried to leave the bedroom and defendant pinned her on the bed and pressed his forearm against her neck, which made it difficult for her to breathe. She tried to leave the bedroom several times, but defendant continued to pull her back in and pin her to the bed. She eventually left the bedroom

-1-

and made it down the stairs. At that point, defendant began haranguing her about the presence of dog feces in the house. The complainant explained that her dog was old and that it sometimes had accidents on the kitchen floor. Defendant made her clean up the dog feces with her hands. He forced her to use her hair as a mop to clean it up, and he attempted to make her eat it. The complainant acknowledged that at some point during the fight, she grabbed a knife from the knife block and stabbed defendant in his back. Defendant pinned her on the ground and took her phone to call his brother and sister-in-law, who lived in the home directly behind theirs. When defendant's brother and sister-in-law arrived, the complainant left the house and went to a local restaurant to call the police.

After the complainant testified at trial, the jury submitted questions. They were discussed by the parties and the trial court in an unrecorded bench conference. The trial court reflected on the questions asked and determined that some were appropriate, while other were not. One of the jury questions the court read to the complainant was, "Do you believe that defendant is guilty today," to which she answered, "[Y]es." This question was likely prompted by her acknowledgment at trial that she had testified at the preliminary examination that she did not believe defendant intended to hurt her.

After the complainant gave her testimony, defendant testified that on October 10, 2020, he and the complainant left the bedroom to go to the kitchen to make food. He acknowledged that there was a discussion regarding dog feces. He denied forcing the complainant to clean up the dog feces with her hands or body. Defendant testified that he was making comments alleging that the complainant had been unfaithful when she grabbed a knife from a nearby knife block. Defendant said that as they struggled over the knife, the complainant stabbed him in the back. Defendant testified that he pinned her down and grabbed her wrist in order to get the knife, but he denied placing his forearm on her neck. The two then struggled over the complainant's phone. Eventually, defendant was able to get the phone and call his brother and sister-in-law. In response to jury questions, defendant denied that he had not let the victim leave the house for days; that he dragged her, pulled her hair, or choked her; or that he had tried to make her eat feces.

## II. ANALYSIS

Defendant argues that due process requires reversal of his convictions because the trial court erred by allowing the complaining witness to testify, in response to a question from a juror, that she believed defendant was guilty. We disagree.

We first note that it is not entirely clear from the record whether defense counsel preserved this issue by objecting to the jury question. In general, "[a] defendant must raise an issue in the trial court to preserve it for [appellate] review." *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). There is no indication that he did so during the off-the-record bench conference. Nothing in the transcript suggests that he raised an objection. Moreover, appellate counsel acknowledges that there is a question regarding whether the issue is preserved, and proceeds to argue as though it was not preserved. For these reasons, we will review the issue as though it is unpreserved. Because defense counsel failed to object on the record to the jury's question and the attendant response regarding defendant's guilt, his claim of error is unpreserved for appeal.

We review unpreserved error in a criminal case for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under plain error review, a defendant bears the burden to prove that: (1) an error occurred, "(2) the error was plain, i.e., clear or obvious, (3) and the plain error affected substantial rights." *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Even when a defendant satisfies these three requirements, this Court "must exercise its discretion in deciding whether to reverse." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763 (quotation marks and citation omitted; alteration in original).

MCR 2.513(I) authorizes a court to "permit the jurors to ask questions of witnesses" and instructs the court to "employ a procedure that ensures that such questions are addressed to the witnesses by the court itself, that inappropriate questions are not asked, and that the parties have an opportunity . . . to object to the questions."

Here, the trial court permitted the jury to ask the complainant, "Do you believe [defendant] is guilty today?" It then permitted her to respond, "[Y]es." By allowing the jury to ask an obviously inappropriate question, see MCR 2.513(I), and allowing it to be answered, the trial court abused its discretion. By confirming that she believed defendant was guilty, the complainant's testimony did not merely imply that he was guilty; it directly stated her belief that defendant was guilty. The question and the response were in direct violation of the well-established rule that a witness may not offer an opinion of the defendant's guilt. *People v Lowrey*, 342 Mich App 99, 109; ___ NW2d ___ (2022). And even though "the questioning of witnesses by jurors, and the method of submission of such questions, rests in the sound discretion of the trial court," *People v Heard*, 388 Mich 182, 188; 200 NW2d 73 (1972), MCR 2.513(I) requires that a trial court "employ a procedure that ensures that . . . inappropriate questions are not asked . . . ." Accordingly, the trial court plainly erred when it presented the jury's question and allowed the victim to testify about her belief that defendant was guilty.

However, defendant has not met his burden to establish that the error was outcome-determinative. The jury's question, which explicitly asked whether the complainant "today" believed that defendant was guilty, indicated that the jury was asking about the complainant's conflicting testimony at the preliminary examination, during which she attested that she did not believe defendant intended to hurt her. In other words, the jury was presumably not inquiring as to the victim's subjective opinion about defendant's guilt, and was instead asking whether she had changed her mind about defendant's intentions toward her. Further, defendant testified after the victim, giving the jury the opportunity to hear defendant's version of events and assess his credibility, which blunted any prejudicial effect of the victim's opinion on defendant's guilt. After defendant's testimony, the jury asked defendant whether he "dragged [the victim] and pulled her hair," "choked her," "used her as a mop for the pee and dog poop," or "tried to make her eat poop." These questions suggest that the jury was not prepared to accept the victim's testimony at face value. And "it is the role of the jury, not this Court, to determine the weight of the evidence or the credibility of witnesses." *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012) (quotation marks and citation omitted). Therefore, although the trial court's error was plain, we

are not persuaded that the error affected defendant's substantial rights such that reversal is warranted.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Michelle M. Rick