# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AARON GERSHON MASSEY,

        Defendant-Appellant.

UNPUBLISHED
July 13, 2017

No. 331077
Oakland Circuit Court
LC No. 2014-253028-FH

Before: GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

A jury convicted defendant of three counts of second-degree criminal sexual conduct in violation of MCL 750.520c(1)(a) for the sexual abuse of a boy under the age of 13. The trial court upwardly departed and sentenced defendant to three concurrent terms of 7 to 15 years' imprisonment. Defendant's challenges to the testimony of the investigating officer do not warrant relief and the challenges to his sentence are without merit. We affirm.

## I. BACKGROUND

Defendant was previously employed as a program assistant at a Boys and Girls Club, where he was responsible for coordinating activities, discipline, and mentoring children. The victim, DC, participated in the club's after-school latchkey and summer camp programs. DC alleged that on three occasions during the 2013/2014 schoolyear, when DC was nine years old, defendant called him away from his friends and into his office. Defendant's office was in a high-traffic area, but he had placed paper over the door's glass window, blocking the view of passers-by. The office also had exterior windows but those were covered by a blackout shade. On all three occasions, defendant instructed DC to bend over and place his elbows on the desk. Defendant then rubbed his erect penis on DC's buttocks for several minutes.

DC reported the incidents to his mother during the summer of 2014. His mother contacted the club and the police. Defendant voluntarily submitted to an interview with Detective Christine Shuler and denied the allegations against him. After charges were filed, the police department issued a press release. Thereafter, several other victims came forward, accusing defendant of sexual abuse. Although the prosecutor never filed additional charges, two of these boys testified as other act witnesses at the current trial. One testified that defendant had rubbed his erect penis on the boy's buttocks and touched the boy's penis. The other asserted that defendant had squeezed his buttocks while hugging him.

-1-

The jury convicted defendant of three counts of CSC-II. The trial court departed from the minimum sentencing guidelines range by 13 months and imposed concurrent sentences of 7 to 15 years. Defendant sought resentencing and the court acknowledged that it failed to state on the record reasons in support of the departure sentence. After rectifying this error, the court imposed the same sentence.

## II. DEPARTURE SENTENCE

Defendant challenges the proportionality of his departure sentence.

July 29, 2015 marked a sea change in Michigan's sentencing jurisprudence. On that day, the Michigan Supreme Court ruled that the mandatory minimum sentence ranges of the legislative sentencing guidelines were unconstitutional as they required sentencing based on judicially found facts. *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502 (2015). To remedy this deficit, the Court severed the mandatory sentencing provisions and rendered the guidelines advisory only. *Id*.

In relation to departure sentences, *Lockridge*, 498 Mich at 392, instructed that appellate courts must conduct a reasonableness review. [*People v Stevens*, 318 Mich App 115, 119; ___ NW2d ___ (2016).]

In *People v Steanhouse*, 313 Mich App 1, 46-47; 880 NW2d 297 (2015), this Court readopted the "principle of proportionality" standard employed by courts before the Legislature enacted mandatory sentencing guidelines. This standard was outlined in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), as follows: "a given sentence [could] be said to constitute an abuse of discretion if that sentence violate[d] the principle of proportionality, which require[d] sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 313 Mich App at 45. In imposing sentence, the court must take " 'into account the nature of the offense and the background of the offender.' " *Id*., quoting *Milbourn*, 435 Mich at 651. Departure sentences " 'are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing' " as well as when " 'the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime.' " *Steanhouse*, 313 Mich App at 45, quoting *Milbourn*, 435 Mich at 656-657.

*Steanhouse* provided further guidance regarding the "important factors" that might be raised at sentencing:

Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than

the fact of the departure itself) may embody a violation of the principle of proportionality. [*Milbourn*, 435 Mich at 659-660.]

Factors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense, *People v Houston*, 448 Mich 312, 321; 532 NW2d 508 (1995); (2) factors that were inadequately considered by the guidelines, *id.* at 324; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, *id.* at 323; *Milbourn*, 435 Mich at 660, the defendant's misconduct while in custody, *Houston*, 448 Mich at 323, the defendant's expressions of remorse, *id.*, and the defendant's potential for rehabilitation, *id.* at 324. [*Steanhouse*, 313 Mich App at 45-46.]

The trial court's stated reasons for its 13-month upward departure from the guidelines were: (1) the degree of upset and devastation experienced by the victim, the other-act witnesses, and their families; (2) the crimes were perpetrated against minors; (3) after hearing defendant's testimony, the court could not "feel comfortable" that "it could never happen again;" (4) defendant had "placed [him]self in a position of authority" over the victim and the other-act witnesses; (5) defendant had always worked with children in a position of authority; (6) defendant had not acknowledged that the conduct of which he was found guilty was the cause of his incarceration, and (7) the court did not believe that defendant had yet realized the severity of the harm that he caused. These factors are all appropriate considerations when imposing sentence and weigh in favor of the relatively small upward departure in this case.

The psychological impact of defendant's actions on the victim, the other-act witnesses and their families was not adequately taken into account by the sentencing guidelines. Offense Variables (OVs) 4 and 5 consider the psychological effect of crimes on both the victim and the victim's family members. However, the OVs do not account for situations in which multiple victims were impacted. MCL 777.34(1) directs that 10 points will be assessed for "psychological injury to a victim" requiring professional treatment and 0 if no victim is so injured. If statutory language is clear and unambiguous, "no further construction is necessary or allowed." *People v Mack*, 265 Mich App 122, 126; 695 NW2d 342 (2005), quoting *People v Davis*, 468 Mich 77, 79; 658 NW2d 800 (2003) (quotation marks and citation omitted). And the statute provides for a score relative to only one victim. Here, there were at least three victims of defendant's sexual abuse while working at the club. Both DC and at least one of these other victims were in therapy as a result.

MCL 777.35(1) similarly contemplates a score of 15 points for psychological injury requiring professional treatment to a member of the victim's family. Again, the score is all or nothing and does not permit a higher score when multiple victims or multiple relatives are impacted. Although the court did not assess points for this variable, it acknowledged that three separate families had been traumatized by defendant's acts and that this was not given adequate weight under the guidelines. We discern no error in the court's reasoning.

The trial court also relied on the fact that the victim and other act witnesses were minors and that defendant had "placed [him]self in a position of authority" over them. Both the victim's youth and defendant's position of authority were addressed under OV 10, which instructs that 10

points are to be added if "[t]he offender exploited a victim's . . . youth or agedness . . . or the offender abused his or her authority status." MCL 777.40(1)(b). Again, however, the guidelines do not account for the two additional victims who were exploited by defendant.

The trial court also considered defendant's employment history, stating that he had always worked with children in a position of authority. Defendant contends that his employment history was both speculative and irrelevant in the absence of any allegations of inappropriate behavior at other jobs. First, the information was not "speculative" as defendant's employment history was listed in the PSIR and defendant did not challenge its accuracy. Defendant's history of seeking jobs that placed him in a position of authority over children was relevant to the trial court's sentencing consideration. This suggested that defendant would continue seeking such positions in the future, leading to the court's concern that defendant would likely reoffend. This Court has held that "the need to protect other children by the sentence imposed is another factor not adequately considered by the guidelines." *People v Armstrong*, 247 Mich App 423, 425; 636 NW2d 785 (2001). Similarly, the Supreme Court has held that "the likelihood of the defendant reoffending" was properly considered as a substantial and compelling reason for departing from the sentencing guidelines. *People v Corrin*, 489 Mich 855; 795 NW2d 13 (2011).

The court's final considerations were interrelated. The court noted that defendant expressed "remorse with respect to what has occurred, but in everything that you said I didn't hear you say you acknowledged that your conduct and the conduct that you were found to be guilty of was what put you where you are. I don't think you've yet come to the realization of the horrendousness of what occurred. . . ." Defendant's level of remorse was a proper factor for the court's consideration. See *Houston*, 448 Mich at 323.

Ultimately, the factors cited by the trial court relative to the proportionality of the advisory minimum sentence weigh in favor of the upward departure sentence imposed in this case. The 13-month upward departure in defendant's minimum sentence was proportional and therefore reasonable under *Lockridge* and *Steanhouse*.

### III. OV 8

Defendant challenges the trial court's assessment of 15 points for OV 8. OV 8 instructs that 15 points be assessed when "[a] victim was asported to another place of greater danger or to a situation of greater danger. . . ." MCL 777.38(1)(a). Defendant contends that his office was not "secreted from observation" and therefore defendant did not summon DC to a "place of greater danger." Defendant further asserts that DC's presence in his offense was merely incidental to the CSC offense, rendering any score inappropriate.

We review for clear error the trial court's factual determinations at sentencing. Those findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review de novo the court's interpretation and application of the legislative sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009).

Previous precedent of this Court dictated that in order to assess points under OV 8, the asportation of the victim could not be "merely incidental to the commission of" the offense. *People v Spanke*, 254 Mich App 642, 647; 658 NW2d 504 (2003). Our Supreme Court recently

overruled this principle. In *People v Barrera*, ___ Mich ___; 892 NW2d 789, 793-794 (2017), the Supreme Court held that the term "asportation" as used in OV 8 is to be accorded its plain meaning, and not analyzed by reference to the term as used in the kidnapping statute. The Court specifically determined that MCL 777.38 does not preclude assessment of points for OV 8 when the asportation is incidental to the sentencing offense; OV 8 should be scored even under such circumstances. *Id*.

In *Barrera*, 892 NW2d at 794, the Supreme Court affirmed a 15-point score for OV 8 when the defendant took the victim into his bedroom, a place "where the sexual assault was less likely to be discovered." Here, defendant summoned DC away from the safety of a common area where he was playing with friends. Defendant waited until he and DC were inside his office, blocked from view, to sexually assault his victim. Defendant's act of moving DC ensured that the assault would not likely be interrupted and discovered. Accordingly, the trial court properly assessed 15 points for OV 8.

## IV. PROSECUTORIAL MISCONDUCT/INEFFECTIVE ASSISTANCE

Defendant finally asserts that the prosecutor improperly elicited testimony from Detective Shuler regarding defendant's credibility and that defense counsel was ineffective for failing to object.

During the prosecutor's direct examination of Shuler, the detective noted that defendant had told his supervisor that he had only placed DC in "a very slight headlock" while play wrestling and had not sexually touched him. The prosecutor asked Shuler if defendant had given her a "consistent" description of "the headlock incident." Shuler testified, "They were different. They actually kind of, I would say progressed throughout the interview." Shuler described that defendant expressed his belief that he was called to the station for an interview for physically or "aggressively" hurting DC during the headlock. Defendant's statements appeared to be an admission that he was aggressive with DC, "[i]nconsistent" with the statement defendant made to his supervisor. The prosecutor inquired, "as an investigator, when you have a suspect giving you two different statements, is that of importance to you?" Shuler responded affirmatively: "Obviously, inconsistent statements is something we look for. We see that a lot of times when people are being deceptive. Usually, if someone's telling the truth their story remains consistent during the entire investigation in whoever they talk to."

During cross-examination, defense counsel emphasized through Shuler's testimony that defendant had not been charged with assaulting the other act witnesses or any other child. On redirect, the prosecutor queried whether "the police department could present charges" related to the other potential witnesses. Shuler affirmed that she could. The prosecutor then asked, "And in your opinion did the defendant commit crimes against those two boys?"; Shuler responded, "Yes."

We review unpreserved challenges to the prosecutor's conduct for plain error affecting the defendant's substantial rights or resulting in the conviction of an innocent person. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999); *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). We review prosecutorial misconduct claims case-by-case. *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). We examine the prosecutor's remarks

in context, and evaluate them "in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Id*. Prosecutors are afforded great latitude in their arguments and conduct. *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). " 'Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* at 235, quoting *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

"[A] witness cannot express an opinion on the defendant's guilt or innocence of the charged offense" because it is for the jury to decide whether a defendant is culpable. *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985). During the first colloquy, the prosecutor did not ask Shuler to comment on defendant's guilt or innocence. Rather, Shuler testified that defendant gave inconsistent statements regarding the events in question. The prosecutor queried whether this was important to the investigation and Shuler indicated that it roused suspicions.

We find *People v Heft*, 299 Mich App 69; 829 NW2d 266 (2012), instructive in this regard. In *Heft*, 299 Mich App at 81-82, the defendant contended that his counsel should have objected when the prosecutor elicited testimony from the arresting officers that the defendant's story made them "feel like something was afoot" and they "didn't think that [the defendant] was being truthful." In *Heft*, the officers first described the defendant's statement and appearance upon being intercepted on a public street. It was 1:30 a.m. and the temperature was well below freezing, and yet the defendant was perspiring and breathing hard and claimed to be "just walking around." *Id*. at 82. This Court held that the prosecutor did not elicit "improper opinions about a defendant's guilt" and that neither officer testified regarding the defendant's "guilt in general." *Id*. at 83.

The same is true here. Like the officers in *Heft*, Shuler testified regarding the suspicion raised by defendant's conduct—making inconsistent statements about his interactions with DC. During the first challenged exchange, Shuler made no comment about defendant's "guilt in general" and merely described the investigative process. As the prosecutor committed no misconduct in this regard, defense counsel cannot be deemed ineffective for failing to object. See *People v Torres*, 222 Mich App 411, 425; 564 NW2d 149 (1996).

During the second challenged exchange, however, the prosecutor directly asked Shuler to comment on defendant's guilt—"in your opinion did the defendant commit crimes against those two [other act witnesses]?" Shuler directly responded "yes," she believed defendant guilty. Although defendant was not on trial for these acts, the implication was that defendant committed the charged offenses as he was guilty of the uncharged acts.

"It is generally improper for a witness to comment or provide an opinion on the credibility of another witness because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). Shuler opined regarding the credibility of the other act witnesses and then segued into the forbidden territory of declaring defendant's guilt. This testimony was directly elicited by the prosecutor. Accordingly, the prosecutor clearly engaged in wrongdoing. And defense counsel surely should have objected.

Relief is not warranted, however. As noted, a new trial is only warranted in the face of an unchallenged incident of prosecutorial misconduct when prejudice results. See *Unger*, 278 Mich App at 235. Similarly, a defendant is only entitled to a new trial based on the ineffective assistance of counsel if but for counsel's errors, the result of the trial "would have been different." *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

DC's testimony standing alone was sufficient to support defendant's CSC-II convictions. MCL 750.520h ("The testimony of a victim need not be corroborated in prosecutions under [MCL 750.520b to MCL 750.520g]."); *People v Szalma*, 487 Mich 708, 724; 790 NW2d 662 (2010). However, other evidence tended to establish defendant's guilt as well. DC's mother described that her son was emotionally unsettled for several weeks before reporting the abuse. The jury heard the testimony from the other act witnesses and could gauge their credibility personally. One of the witnesses described that defendant committed strikingly similar abuses upon him. Given this record, we cannot determine that defendant was deprived of a fair trial or that Shuler's testimony resulted in the conviction of an innocent man. Defendant is therefore not entitled to a new trial.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro