# Court of Appeals, State of Michigan

## ORDER

People of MI v Octavius Martez Hall

Docket No.    348467

LC No.    18-001384-01-FC

Mark T. Boonstra
Presiding Judge

Mark J. Cavanagh

Stephen L. Borrello
Judges

The motion for reconsideration is GRANTED, and this Court's opinion issued November 19, 2020 is hereby VACATED.  A new opinion is attached to this order.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

January 14, 2021
Date

_____
Chief Clerk

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 14, 2021

Plaintiff-Appellee,

v

No. 348467
Wayne Circuit Court
LC No. 18-001384-01-FC

OCTAVIUS MARTEZ HALL,

Defendant-Appellant.

ON RECONSIDERATION

Before: BOONSTRA, P.J., and CAVANAGH and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of intentionally discharging a firearm from a motor vehicle causing serious impairment, MCL 750.234a(1)(c), assault with intent to do great bodily harm, MCL 750.84, carrying a concealed weapon, MCL 750.227, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to 10 to 30 years' imprisonment for the intentionally discharging a firearm from a motor vehicle causing serious impairment conviction, 7 to 15 years' imprisonment for the assault with intent to do great bodily harm conviction, 3 to 7½ years' imprisonment for the carrying a concealed weapon conviction, and two years' imprisonment for each of the felony-firearm convictions. We reverse defendant's conviction and sentence for discharging a firearm from a motor vehicle causing serious impairment and the associated felony-firearm conviction and sentence, remand for a new trial on those charges, and affirm defendant's remaining convictions and sentences.

This case arises out of an April 10, 2016 incident in which defendant shot Leon McCray multiple times in Detroit, Michigan. After being convicted and sentenced in the manner described above, defendant commenced the instant appeal.

Defendant first argues that he was denied his right to a speedy trial. We disagree.

-1-

"The determination whether a defendant was denied a speedy trial is a mixed question of fact and law.  The factual findings are reviewed for clear error, while the constitutional issue is a question of law subject to review de novo."  *People v Waclawski*, 286 Mich App 634, 664; 780 NW2d 321 (2009) (citations omitted).

"[A] defendant's right to a speedy trial is guaranteed by the United States and Michigan Constitutions."  *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013), citing US Const, Am VI; Const 1963, art 1, § 20.  See also MCL 768.1 (codifying the right to a speedy trial).  No fixed number of days of delay exists after which the right to a speedy trial is violated.  *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006).  "Whether an accused's right to a speedy trial is violated depends on consideration of four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant."  *Rivera*, 301 Mich App at 193 (quotation marks and citation omitted).  "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury."  *Williams*, 475 Mich at 262.  "[A] presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial."  *Id*. (quotation marks and citation omitted).  Delays that inhere in the court system, such as docket congestion, are technically attributable to the prosecution but are given a neutral tint and assigned only minimal weight in determining whether a speedy trial violation occurred.  *Id*. at 263.

At a motion hearing on May 4, 2018, the trial court provided a timeline of relevant events and set forth its reasons for rejecting defendant's claim of a speedy trial violation.[1]  The trial court noted that defendant was arraigned on the original warrant in April 2016 and that a preliminary examination was held on April 27, 2016.  An arraignment on the information was held on May 4, 2016.  Trial was originally scheduled for September 12, 2016.  On August 30, 2016, defense counsel moved to adjourn the September 12, 2016 trial date because the prosecution had allegedly failed to produce certain discovery materials.  A new trial date was scheduled for March 6, 2017.  On December 9, 2016, a pretrial conference was adjourned at the request of the defense, and the pretrial conference was not held until February 28, 2017.  The March 6, 2017 trial date was adjourned at the request of the defense until June 26, 2017.  When prosecution witnesses failed to

---

[1] Defendant appended no documentation to his motion to dismiss or to his brief on appeal regarding the timeline of events, even though many of the relevant events occurred in an earlier lower court file, Wayne Circuit Court Docket No. 16-003512-02-FC, that is not part of the instant lower court file (due to the fact that the original charges were dismissed when the prosecution's civilian witnesses failed to appear for the scheduled trial in June 2017 and the charges were then refiled in the instant action).  In any event, the prosecutor has provided, both below and on appeal, the registers of actions for the prior lower court file and the instant lower court file, and, in the trial court's ruling from the bench, the trial court provided, from the registers of actions as well as the trial court's own files and records, a summary of the relevant events as summarized herein.  It is well settled that a trial court may take judicial notice of its own files and records, *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009), and defendant has provided nothing to suggest that the trial court's summary of relevant events was inaccurate.

appear for trial on June 26, 2017, the trial court granted defendant's motion to dismiss without prejudice. At the time of dismissal, the prosecution indicated that it intended to refile the charges. While the proceedings in the earlier action and the instant action were pending, and as of the date of the trial court's May 4, 2018 decision on defendant's speedy trial claim, defendant was incarcerated on an unrelated matter with the Department of Corrections, with an earliest release date of January 9, 2019. The warrant in the instant action was filed on June 28, 2017, and defendant was arraigned on the warrant on January 17, 2018. The preliminary examination was originally scheduled for January 30, 2018, but it was adjourned at the request of the defense until February 13, 2018; on that later date, the preliminary examination was commenced and then continued on February 22, 2018.

The trial court then summarized pertinent caselaw regarding the right to a speedy trial and the four factors to be considered, which were set forth earlier in this opinion. The trial court noted that the length of the delay was 23 months, with approximately seven months of the delay attributable to the defense and 16 months attributable to the prosecution. The court noted that a delay in excess of 18 months creates a presumption of prejudice and that the prosecution bears the burden of showing that no injury occurred. Based on its review of the register of actions for the prior lower court file, the trial court questioned whether the adjournment of the September 12, 2016 trial date was attributable to the prosecution, given that the defense moved for the adjournment. Anyway, the length of the delay was insufficient by itself to require a dismissal. The delay in arraigning defendant on the new warrant was not malicious, and the prosecutor's negligence as well as docket congestion were neutral reasons that should be given minimal weight. Defendant did not assert his right to a speedy trial until the preliminary examination in February 2018 and the filing of his speedy trial motion in March 2018. Defendant's failure to assert his speedy trial right earlier weighed against a finding of a speedy trial violation. Defendant was not prejudiced by the delay in this case. Defendant was incarcerated on unrelated convictions during the delay in the arraignment on the new warrant, and there was no prejudice to his defense. Defendant's motion to dismiss the case was thus denied.

Defendant argues that the trial court erred in concluding that there was no violation of defendant's right to a speedy trial. We disagree.

The first factor to consider in determining whether a speedy trial violation occurred is the length of the delay. The parties agree that the relevant delay was 23 months.[2] As the prosecutor

_____

[2] Defendant's appellate argument focuses on the 23-month delay that was the focus of his motion to dismiss. Because defendant's trial did not occur until February 2019, the delay was actually greater than 23 months, but defendant's appellate argument only focuses on the delay up until the time of defendant's speedy trial motion. Defendant does not argue that his right to a speedy trial was violated by the additional delay after the denial of his speedy trial motion, nor did he renew his speedy trial claim below on the basis of such additional delay of the trial. Moreover, it appears that most of the delay after the May 4, 2018 denial of defendant's speedy trial motion is attributable to the defense, and defendant waived any speedy trial claim for much of that period. At the May 4, 2018 hearing, after the trial court denied defendant's speedy trial motion, defendant's retained counsel, Henry Scharg, said that he was unavailable for a trial until

-3-

concedes, because the delay exceeded 18 months, prejudice is presumed, the burden shifts to the prosecution to show the absence of any injury, and an inquiry is required into the other factors used to determine whether a speedy trial violation occurred. See *Williams*, 475 Mich at 262.

The second factor is the reasons for the delay. The trial court exhaustively reviewed its own files and records as well as the registers of actions for both the prior action and this action. The court noted that various adjournments had been requested by the defense and ultimately concluded that seven months of the 23-month delay were attributable to the defense and that 16 months of the delay were attributable to the prosecution.[3] Although there was a lengthy delay between the filing of the new warrant on June 28, 2017, and the arraignment on that warrant on January 17, 2018, the trial court aptly noted that there was no indication that this delay was attributable to any deliberate effort by the prosecution to delay the trial. Rather, it appears that this delay was due to prosecutorial negligence, which is viewed with a neutral tint and should not be weighed heavily. See *Barker v Wingo*, 407 US 514, 531; 92 S Ct 2182; 33 L Ed 2d 101 (1972).

The third factor is the assertion of the right to a speedy trial. The prosecution concedes that defendant asserted his speedy trial right at the preliminary examination in February 2018 and when he filed in the circuit court his motion to dismiss the case premised on a speedy trial violation in March 2018. Although defendant asserted his speedy trial right at those points, the trial court was correct to note that defendant did not assert his speedy trial right earlier in the proceedings. A defendant's failure to timely assert the right weighs against a finding that a speedy trial violation

---

September 2018 because he had a major trial in federal court over the summer of 2018. Trial in this case was thus scheduled for October 9, 2018. At a hearing on September 21, 2018, Scharg asked for permission to withdraw from the case for reasons that he did not want to state on the record. Defendant stated that he had no objection to Scharg's request to withdraw from the case. Defendant said that he would be unable to retain a new attorney and would thus need appointed counsel. Defendant expressed his understanding that it would be difficult for a new attorney to prepare for the scheduled trial date of October 9, 2018. Scharg said that he had conferred with defendant on the matter and that defendant would waive any speedy trial claim for the period of delay between the October 9, 2018 scheduled trial date and any new trial date that the trial court would set. The trial court thus allowed Scharg to withdraw. At a special pretrial hearing on September 25, 2018, the trial court announced that Robert Kinney had been appointed as defendant's new counsel, and the court adjourned the October 9, 2018 trial date so that Kinney could have time to prepare.

[3] Defendant suggests that the trial court erred in attributing seven months of the delay to the defense; defendant reasons that the defense requests for adjournments were due to the prosecutor's failure to turn over discovery materials. But defendant has provided no documentation from the prior lower court file to support this reasoning. Anyway, even if the trial court somehow erred in attributing some of the delay to the defense, it does not affect the ultimate determination that defendant's right to a speedy trial was not violated. As explained later, the most important consideration in this case is that defendant was not prejudiced by the 23-month delay. This Court will affirm a trial court's decision that reaches the correct result for the wrong reason. *People v McLaughlin*, 258 Mich App 635, 652 n 7; 672 NW2d 860 (2003).

occurred. *People v Wickham*, 200 Mich App 106, 112; 503 NW2d 701 (1993). Defendant alludes to the possibility that he lacked notice that the new warrant had been filed until he was arraigned on that warrant in January 2018, but the prosecution had expressed its intent to refile the charges when the earlier action was dismissed in June 2017. In any event, this factor does not weigh heavily in either direction and is not dispositive of whether a speedy trial violation occurred here.

The final factor is whether defendant was prejudiced by the delay. "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (quotation marks and citation omitted). "Prejudice to the defense is the more serious concern, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. (quotation marks and citations omitted). See also *People v Simpson*, 207 Mich App 560, 564; 526 NW2d 33 (1994) ("The length of delay is insufficient in and of itself to require dismissal. In considering the prejudice to the defendant, the most serious inquiry is whether the delay has impaired the defendant's defense.") (citation omitted). Defendant suffered no prejudice to his person. He was incarcerated on an unrelated matter during the relevant period of delay.[4] Nor has defendant suffered any prejudice to his defense. Defendant has not alleged that any exculpatory evidence has been lost or destroyed or that any defense witnesses have become unavailable as a result of the delay. The lack of prejudice to the defense weighs heavily against a speedy trial violation, even when the delay is long. See *Williams*, 475 Mich at 263-264; *People v Chism*, 390 Mich 104, 115-116; 211 NW2d 193 (1973).

Overall, we agree with the trial court's decision. Consideration and balancing of the various factors lead to the conclusion that defendant's right to a speedy trial was not violated.

Defendant next argues that the trial court committed an instructional error by omitting from the final jury instructions an element of the offense of intentionally discharging a firearm from a motor vehicle causing serious impairment. Defendant also argues that defense counsel was ineffective for agreeing to the trial court's flawed instruction. Although the instructional issue itself is waived, we agree with defendant that he was denied the effective assistance of counsel with respect to this issue.

"A party must object or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). Defendant did not object to the instruction on the offense of intentionally discharging a firearm from a motor vehicle causing serious impairment. Therefore, the instructional issue is unpreserved.

---

[4] Defendant cursorily suggests that he was denied the ability to participate in unspecified programs in the Department of Corrections because of the pending charges, but this contention has been supported by nothing more than defense counsel's bare assertion in the trial court. Moreover, defendant cites no authority holding that the inability to participate in a program in a correctional facility constitutes prejudice to a defendant's person for the purpose of a speedy trial claim. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Moreover, defendant did not merely fail to object to the instruction; his trial attorney affirmatively approved of the trial court's instructions. After the trial court provided its final instructions to the jury, including the instruction challenged on appeal, the trial court asked the attorneys if there were any objections to the instructions that were given, and defense counsel responded that he did not have any objections. By expressly approving the jury instructions, defendant waived review of the alleged instructional error. See *People v Kowalski*, 489 Mich 488, 503-505; 803 NW2d 200 (2011). Waiver extinguishes any error, meaning that there is no error to review. *Id*. Although the instructional issue itself is waived, we will consider the underlying issue in the context of defendant's claim of ineffective assistance of counsel with respect to the failure to object to the instruction.

To preserve a claim of ineffective assistance of counsel, a defendant must raise the issue in a motion for a new trial or a *Ginther*[5] hearing. *People v Foster*, 319 Mich App 365, 390; 901 NW2d 127 (2017). Defendant did not raise this issue in a motion for a new trial or a *Ginther* hearing. Hence, the ineffective assistance of counsel issue is unpreserved.

Generally, claims of instructional error involving a question of law are reviewed de novo. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *Id*. Because defendant failed to move for a new trial or request a *Ginther* hearing on this issue, this Court's review is limited to mistakes apparent on the record. *Foster*, 319 Mich App at 390.

As explained above, the instructional issue itself is waived. Nonetheless, defendant argues that he was denied the effective assistance of counsel when defense counsel failed to object and expressly approved the flawed instruction on intentionally discharging a firearm from a motor vehicle causing serious impairment. The prosecutor concedes that defendant is entitled to relief on the basis of ineffective assistance of counsel. We agree.

"To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks, brackets, and citation omitted). Defense counsel is afforded wide discretion on matters of trial strategy, *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013), and the defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy, *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). To establish prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted).

"A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense. A defendant is thus entitled to have all the elements of the crime submitted to the jury in a charge which is neither erroneous nor misleading." *Kowalski*, 489 Mich at 501 (quotation marks, brackets, ellipsis, and citations omitted).

Defendant was charged with, and convicted of, intentionally discharging a firearm from a motor vehicle causing serious impairment, which is set forth in MCL 750.234a(1)(c). MCL 750.234a(1) provides:

> (1) An individual who intentionally discharges a firearm from a motor vehicle, a snowmobile, or an off-road vehicle is guilty of a crime as follows:
>
> (a) If the violation endangers the safety of another individual, the individual is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $10,000.00, or both.
>
> (b) If the violation causes any physical injury to another individual, the individual is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $15,000.00, or both.
>
> (c) If the violation causes the serious impairment of a body function of another individual, the individual is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $25,000.00, or both.

MCL 750.234a(5)(b) provides, " 'Serious impairment of a body function' means that term as defined in section 58c of the Michigan vehicle code, 1949 PA 300, MCL 257.58c." MCL 257.58c states:

> "Serious impairment of a body function" includes, but is not limited to, 1 or more of the following:
>
> (a) Loss of a limb or loss of use of a limb.
>
> (b) Loss of a foot, hand, finger, or thumb or loss of use of a foot, hand, finger, or thumb.
>
> (c) Loss of an eye or ear or loss of use of an eye or ear.
>
> (d) Loss or substantial impairment of a bodily function.
>
> (e) Serious visible disfigurement.
>
> (f) A comatose state that lasts for more than 3 days.
>
> (g) Measurable brain or mental impairment.

-7-

(h) A skull fracture or other serious bone fracture.

(i) Subdural hemorrhage or subdural hematoma.

(j) Loss of an organ.

The trial court instructed the jury as follows regarding the elements of this offense:

> The Defendant is charged with intentionally discharging a firearm from a motor vehicle. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt.

> First, that the Defendant discharged a firearm. Second, that he did so intentionally, that is on purpose. Third, that he did so from a motor vehicle. Fourth, that he discharged the firearm in a way that caused the physical injury to Leon McCray.

The trial court failed to instruct the jury that defendant must have discharged the firearm in a way that caused a serious impairment of a body function, and the court failed to instruct the jury on the definition of a serious impairment of a body function. Rather, the court instructed the jury that the violation need only have caused a physical injury to McCray. The trial court thus omitted an essential element of the offense with which defendant was charged and of which he was convicted. Defense counsel's failure to object to this flawed instruction, and his affirmative approval of the instruction, fell below an objective standard of reasonableness. There was no reasonable strategic basis to fail to object or to approve an instruction that omitted an essential element of the offense.

Moreover, defendant was prejudiced by defense counsel's deficient performance. Although McCray was shot in three parts of his body, there was a lot of blood at the scene, and he was taken to the hospital, there was not overwhelming evidence at trial that his condition qualifies as a serious impairment of a body function under the statutory definition. But for counsel's unprofessional error, there is a reasonable probability of a different result, i.e., a probability sufficient to undermine confidence in the outcome. See *Randolph*, 502 Mich at 9. Defendant is thus entitled to a new trial with respect to his conviction of intentionally discharging a firearm from a motor vehicle causing serious impairment as well as the associated felony-firearm conviction.[6]

---

[6] When instructing the jury on the associated felony-firearm charge, the trial court referred to its earlier erroneous instruction on the predicate offense.

Defendant also challenges the scoring of Prior Record Variables (PRV) 2 and 5, as well as Offense Variables (OV) 3 and 4. While these arguments are moot as to defendant's sentence for his conviction of intentionally discharging a firearm from a motor vehicle causing serious impairment, the scoring issues are relevant to the sentences for the remaining convictions. As the prosecutor conceded, PRV 2 and 5 were incorrectly scored. The total PRV score should have been 60, resulting in PRV Level E—not 95 and resulting in PRV Level F. Therefore, the errors changed the sentencing guidelines range for the remaining convictions.

However, we reject defendant's arguments as to the scoring of OVs 3 and 4, which were correctly scored at 25 points and 10 points, respectively, for a total OV score of 65, resulting in OV Level V.

OV 3 pertains to physical injury to a victim. MCL 777.33(1). An assessment of 25 points is required if the victim suffered a life-threatening or permanently incapacitating injury. MCL 777.33(1)(c). The trial court determined that an assessment of 25 points was warranted because McCray suffered three gunshot wounds and had to undergo surgery, which was sufficient to conclude that he suffered a life-threatening injury. Injuries are considered life-threatening if they were, in the normal course, potentially fatal. *People v Chaney*, 327 Mich App 586, 590-591; 935 NW2d 66 (2019). McCray was shot three times, bled heavily, and was rushed to the hospital for emergency treatment, including surgery. McCray's victim impact statement indicated that he had been unable to return to work because of the gunshot wound to his arm. Being shot in three parts of one's body, necessitating emergency hospitalization and surgery, is potentially fatal. The trial court did not clearly err in finding by a preponderance of the evidence that McCray's injuries were life-threatening. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted), superseded by statute in part on other grounds as stated in *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019).

OV 4 concerns psychological injury to a victim. MCL 777.34(1). An assessment of 10 points is required for a serious psychological injury requiring professional treatment. MCL 777.34(1)(a). An assessment of 0 points is required if there was no serious psychological injury requiring professional treatment. MCL 777.34(1)(c). MCL 777.34(2) provides, "Score 10 points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014). The trial court assessed 10 points for OV 4. The trial court relied on McCray's impact statement that he was already in counseling for other issues and this event apparently compounded those issues. Further, McCray testified at trial that he was panicking on the way to the hospital;

he was in fear for his life because he saw a lot of blood and did not know where he had been shot. Considering all of the evidence and reasonable inferences, the trial court did not clearly err in finding by a preponderance of the evidence that McCray suffered a serious psychological injury requiring professional treatment. See *Hardy*, 494 Mich at 438.

Accordingly, because the scoring errors as to PRV 2 and 5 affected the minimum sentencing guidelines range for the remaining convictions, resentencing as to those convictions is required. See *People v Francisco*, 474 Mich 82, 89-92; 711 NW2d 44 (2006).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello