*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 17, 2025
1:13 PM

Plaintiff-Appellee,

v

No. 365864
Oakland Circuit Court
LC No. 2020-275682-FC

CORTEZ ANGELO WHITE,

Defendant-Appellant.

Before: MALDONADO, P.J., and CAMERON and YOUNG, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of five counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(e) (armed with a weapon), and five counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 60 to 100 years' imprisonment for each count of CSC-I, and two years' imprisonment for each count of felony-firearm. The sentences for felony-firearm are to be served concurrent with each other but consecutive to the corresponding counts of CSC-I. We affirm.

## I. BACKGROUND

DE posted an advertisement online for escort services, and defendant called her on August 29, 2020. They arranged to meet at defendant's apartment at about 4:00 a.m. After DE arrived at defendant's apartment, he pulled out a gun from underneath the mattress in the bedroom and told DE that she was going to perform oral sex on him. Another man arrived, and DE was forced to perform oral sex on defendant while they were on the bed and the other man vaginally penetrated DE from behind at the same time. The second man then took DE's car keys and went through her vehicle. He showed her that he found some mail with her name and address on it in the car. DE later discovered that cash and debit and credit cards were missing from her vehicle.

Defendant had DE again perform oral sex on him as he sat in a chair. Defendant recorded a portion of the acts performed using his phone. Defendant then had DE get back on the bed and vaginally penetrated her. When defendant did not ejaculate, he had her perform oral sex. After about 2½ hours, DE was allowed to leave. Later that day, DE's cousin encouraged her to go to

the hospital, and a sexual assault nurse examiner (SANE) performed a sexual assault examination on DE.

At about noon on August 29, 2020, defendant contacted NH, who had also placed an advertisement for escort services, and they agreed on a price for sex. However, before NH went to defendant's apartment, she let defendant know that she did not need the money that he offered to pay her for sex because NH had obtained money from her mother. NH told defendant that they could still "hang out" and smoke marijuana. NH arrived at defendant's apartment at about 1:00 p.m., and after she entered, defendant pulled out a gun. Defendant had NH perform oral sex on him and also penetrated her vaginally. After NH left defendant's apartment, she called the police.

The jury heard testimony that both women initially gave the police false information about how or why they met with defendant, primarily because they were embarrassed or afraid because they were offering sexual services for money. A search of defendant's apartment revealed a handgun. A search of defendant's phone revealed evidence of communications with both women and also recordings made of sexual acts performed by DE. Defendant was charged with three counts of CSC-I perpetrated against DE and two counts of CSC-I perpetrated against NH.

While the prosecution maintained that DE and NH did not know each other before this case was brought, the defense's theory was that they knew each other and that they worked together in this incident. The defense contended that any sexual conduct defendant engaged in with the women was consensual. Defendant testified at trial and admitted to hiring the women for sex and engaging in sexual acts with them. However, defendant denied that they were forced to sexually perform at gunpoint. Defendant explained that he only pulled out his gun when DE and her "pimp" demanded more money from defendant after he and DE were finished having sex. Likewise, defendant also pulled out his gun only after he had sex with NH. Defendant asserted that NH began threatening him after he would not pay NH the money that DE had demanded earlier with her pimp.

## II.  DEFENSE COUNSEL'S ISSUES

### A.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that the trial court erred by denying his motion for a new trial on the basis of ineffective assistance of counsel. We disagree.

Because defendant raised this issue before the trial court, it is preserved for appellate review. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020); *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review factual findings for clear error, and we review de novo questions of constitutional law. *Id*. However, because an evidentiary hearing was not conducted on this issue, our review is limited to whether error is apparent on the existing record. *Abcumby-Blair*, 335 Mich App at 227; *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020).

To demonstrate ineffective assistance of counsel, defendant must first establish that counsel's performance was deficient, which involves " 'whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Defendant must also demonstrate that he was prejudiced by counsel's error. *Leffew*, 508 Mich at 637. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Reasonable probability means a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks and citations omitted).

Effective assistance of counsel is presumed, and the defendant bears a heavy burden to prove otherwise. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). This Court is reluctant to substitute its judgment for that of trial counsel with respect to matters of trial strategy. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

In this case, defendant argues that his counsel was ineffective for not objecting to testimony from Tamara Kilbride, the SANE who examined DE. Defendant further argues that Kilbride was allowed to vouch for DE's credibility by emphasizing to the jury that DE was a victim of sexual assault. We disagree.

In support of his assertions, defendant relies on our Supreme Court's decision in *People v Thorpe*, 504 Mich 230; 934 NW2d 693 (2019). In that case, the Court examined two consolidated cases involving the use of expert testimony about the sexual abuse of children: *People v Thorpe* and *People v Harbison*. In *Thorpe*, the Court held that expert witnesses may not testify that children overwhelmingly do not lie when reporting sexual abuse because that type of testimony involves vouching for the credibility of the complainant. *Id.* at 235. In *Harbison*, the Court held that examining physicians cannot testify that a complainant was sexually assaulted without physical evidence to corroborate the complainant's account of sexual assault because such testimony also vouches for the credibility of the complainant and interferes with the jury's role. *Id.*

In this case, defendant argues that Kilbride improperly vouched for DE when Kilbride told the jury that a SANE "is a registered nurse who has taken additional training to be able to care for patients of a sexual assault without causing additional trauma." Defendant further claims that Kilbride improperly informed the jury that she believed that DE was a victim of sexual assault when Kilbride described the purpose of a SANE examination is "to provide comprehensive care" without "increasing the trauma and the aftermath" of a sexual assault. Likewise, Kilbride confirmed that she provides sexual assault victims with prophylaxis to prevent sexually transmitted diseases and emergency contraceptives to prevent pregnancy, all of which she administered to DE.

We do not believe that defendant has shown that Kilbride's testimony was objectionable. Her comments were about treating sexual assault victims in general. The comments did not directly address DE's claims or credibility. More importantly, upon further questioning, Kilbride made it clear that she could not determine if there was consensual sex or a sexual assault in this

case from conducting her examination. She treated DE (and other patients) on the basis of the history provided. Even if counsel had objected, the outcome would not have changed because Kilbride's comments did not address DE's credibility. Therefore, defendant has not met his burden on this argument. See *Leffew*, 508 Mich at 637.

Next, defendant argues that his counsel was ineffective for not demanding discovery related to Kilbride's proposed testimony about DE's injuries so that counsel could better prepare or hire an expert to challenge Kilbride's testimony. Defendant also argues that his counsel should have challenged Kilbride's testimony because it exceeded the scope of her expertise. We disagree.

Pursuant to MCR 6.201(A)(3), upon request, a party must disclose the names and addresses of all expert witnesses who may be called at trial, as well as "*either* a report by the expert *or* a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion . . . ." (emphasis added).

In this case, the prosecutor provided defense counsel with a copy of the report that Kilbride prepared at the time she examined DE. At trial, Kilbride used the report to refresh her memory. Accordingly, then, that report likely was all that was available under a discovery request, and it was unlikely that the defense could have also obtained a written description of Kilbride's proposed testimony.

Alternatively, MCR 6.201(A)(1) allows for a witness to be available for a pretrial interview, but defendant has not made an offer of proof to suggest that defense counsel had reason to interview Kilbride ahead of trial. Defendant relies only on speculation to argue that had defense counsel conducted further discovery, he would have had reason to object to Kilbride's testimony on the ground that she offered testimony outside of her report or her expertise.

Kilbride testified that she found an injury during her examination of DE that Kilbride described as "an abrasion to the posterior fourchette region," which is "usually a protected area" at the base of the vaginal opening. Kilbride opined that "[a]brasions on the posterior fourchette are not common during consensual sex because both parties are in the proper position . . . [with] the right pelvic tilt . . . so that there's no confrontation between body parts." Nevertheless, Kilbride conceded that DE's injury could have occurred when the second man penetrated DE and that Kilbride could not say whether the sex in this case was consensual.

We do not believe that this testimony is outside the scope of Kilbride's expertise. To the contrary, Kilbride was qualified as a forensic nurse trained in performing sexual assault examinations, and the challenged testimony involves whether a particular type of abrasion is more commonly seen in cases where there has been a sexual assault, as opposed to consensual sex.

In support of his motion for a new trial, defendant provided an affidavit from another SANE, Gail Lippert, who averred that she disagrees with Kilbride's testimony that injury to the posterior fourchette is not common during consensual sex because of the position of the bodies. Lippert asserted that injuries to the posterior fourchette are caused by friction and contact and can occur during both consensual and nonconsensual sex. A SANE nurse can only determine whether such an injury is a result of sexual assault by the history provided by the patient; there is nothing about the injury itself that indicates sexual assault.

With Lippert's affidavit, defendant has shown that there may be a difference of opinion among SANEs regarding whether abrasions to the posterior fourchette are common in sexual assaults. However, although Kilbride suggested that this type of injury is common in sexual assault cases and not common when there is consensual sex, it was made clear to the jury that Kilbride could not determine whether DE was sexually assaulted or consented to having sex with defendant. Accordingly, even if the defense had produced Lippert or another expert witness to refute this part of Kilbride's testimony, it is unlikely that the trial result would have changed because whether DE and defendant had consensual sex came down to the credibility of DE and defendant. Therefore, defendant has not shown that more discovery to prepare for Kilbride's testimony or failure to produce a defense expert witness would have changed the outcome of this trial, as required to prove ineffective assistance of counsel. See *Leffew*, 508 Mich at 637.

Defendant next argues that his counsel was ineffective for not properly advising him on whether to accept a plea deal. We do not believe that defendant has met his burden on this issue.

"As at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014). When evaluating a plea offer, "[d]efense counsel must explain to the defendant the range and consequences of available choices in sufficient detail to enable the defendant to make an intelligent and informed choice." *People v Jackson*, 203 Mich App 607, 614; 513 NW2d 206 (1994). To establish ineffective assistance of counsel in the context of a plea, a defendant must meet *Strickland's* familiar two-pronged standard that we noted previously. *Douglas*, 496 Mich at 592.

Furthermore, to demonstrate prejudice arising out of a defendant's decision to reject a plea offer and stand trial, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that" (1) "the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) the trial court would have accepted the terms of the plea offer; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id*. (quotation marks and citation omitted).

On appeal, defendant argues that his trial counsel, Ben Gonek, failed to discuss the prosecutor's plea offer with him in detail or advise him that he faced a minimum sentence under the guidelines of at least 60 years. In support of his argument, defendant submitted an affidavit averring to Gonek's deficiencies. Notably, defendant focuses only on Gonek's representation. However, early on in this matter, defendant was represented by John Holmes, Jr. It is possible that Holmes advised defendant that he was facing a minimum sentence as high as 60 or more years under the guidelines. Indeed, Holmes referred to the possibility of a plea offer on the record multiple times. At a pretrial hearing in March 2021, Holmes informed the trial court that he had discussed resolving this case with the prosecutor, but that there was "a huge gap between what the People would consider appropriate and what [defendant] might be willing to do so . . . those discussions will have to continue."

At a pretrial hearing in July 2021, the trial court asked about the likelihood that this case could be settled, and Holmes told the trial court that the likelihood was "slim." Holmes further advised the trial court that there had not been "a lot of substantive discussion for a while about

this. But we will make an effort." At that same hearing, the prosecutor also discussed defendant's sentencing guidelines:

> *Ms. Greene* [the prosecutor]: The guidelines in this case so everyone has some kind of—you know barometer for this, when I calculate them I get two different numbers. On the bottom is fourteen and a quarter years and the other way I calculated them is eighteen and three-quarters years.
>
> The top end is forty-seven and a half years or sixty-two and a half years.

That hearing was conducted over Zoom, and Holmes waived defendant's appearance. Accordingly, defendant apparently did not hear those comments. However, the record shows that the prosecutor calculated the guidelines in a manner consistent with how the trial court calculated them at the time of sentencing. Further, defendant was present at the next hearing on April 19, 2022, during which Holmes assured the trial court that the case was headed to trial.

At the time of the next pretrial hearing in August 2022, Holmes had passed away, and Gonek began representing defendant. Defendant attended the last pretrial hearing, during which the trial court asked about a possible plea deal, and the prosecutor reiterated that defendant's sentencing guidelines "begin in the range of 18.75 years" and that she had "extended an offer of fifteen years," which defendant had declined.

Then, just before jury selection for the trial began, the court again inquired about plea offers made to defendant, and the following was placed on the record:

> *The Court*: Has there been any plea offers or any preliminary issues that need to be discussed?
>
> *Ms. Greene*: Throughout this case I did make a sentencing agreement offer to [defendant] and his counsel of fifteen years on the minimum, Judge. I know we've put that on the record before. It's my understanding that the defendant is— the defendant has not countered and is not interested in that offer.
>
> *Mr. Gonek* [defense counsel]: Judge?
>
> *The Court*: Yes, sir.
>
> *Mr. Gonek*: [Defendant], indicated that he never received that offer, but I was here at the last couple pretrials where it was placed on the record.
>
> He did indicate at that point that he rejects it. And today he's indicating that he rejects it.
>
> *The Court*: Sir, your position, sir, you'd like to proceed with trial, correct?
>
> *The Defendant*: Yeah, I have to.
>
> *The Court*: Okay.

*The Defendant*: I have to.

*The Court*: No problem, sir.

*The Defendant*: Yes.

Because defendant's argument involves defense counsel's advice to defendant on whether to accept a plea deal, this is the type of issue for which it is necessary to have the testimony of counsel to explain what advice was given to the defendant so he could make an informed decision on whether to accept the plea deal. See *People v Rockey*, 237 Mich App 74, 77; 601 NW2d 887 (1999) ("[I]n making the testimonial record necessary to support a claim of ineffective assistance of counsel, the testimony of trial counsel is essential.")

In light of the death of Holmes, however, this Court is limited to the existing record in reviewing what advice he gave defendant about the sentences that he faced if he went to trial and was convicted. Defendant has not included a proper offer of proof to show that Holmes failed to counsel him regarding the upper end of the guidelines. Defendant's own affidavit is insufficient to support remanding this matter for an evidentiary hearing when he fails to address any advice that he received from Holmes. On the basis of Holmes' attendance at the pretrial hearing in which the prosecutor identified the upper range of the guidelines and Holmes's references to his "discussions" and "effort" regarding a plea offer, the record supports the strong presumption that Holmes effectively counseled defendant about these issues. See *Head*, 323 Mich App at 539.

Furthermore, defendant maintained his innocence and repeatedly insisted on standing trial. Therefore, defendant has not shown that there was a reasonable likelihood that he would have accepted the plea offer "but for" Gonek's failure to fully advise him of the sentencing consequences that he faced if he went to trial and was convicted. See *Douglas*, 496 Mich at 592. Finally, defendant also has not established that the trial court would have accepted defendant's plea. See *id*.

Accordingly, defendant has failed to show that he was deprived of the effective assistance of counsel with regard to any of the above grounds.

## B. EVIDENTIARY HEARING

Next, defendant argues that the trial court also erred when it refused to grant him an evidentiary hearing, which he requested when he moved for a new trial, preserving the issue at that time. See *Heft*, 299 Mich App at 80. We review a trial court's decision to deny holding an evidentiary hearing for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). An abuse of discretion occurs when the trial court chooses an outcome outside the range of reasonable and principled outcomes. *Id*. at 217. We conclude that the trial court did not err by denying defendant's motion for an evidentiary hearing.

The defendant bears the burden of establishing the factual predicate for the claim of ineffective assistance of counsel. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). As discussed, defendant included two affidavits with his motion seeking an evidentiary hearing.

With regard to Lippert's affidavit, as previously noted, we do not believe that defendant has shown that her testimony would have likely changed the outcome of the trial. Lippert's testimony was intended to show that a SANE could not determine if DE's injury resulted from consensual sex or a sexual assault. Kilbride acknowledged that she could not determine if an injury was due to consensual sex or a sexual assault. Therefore, Lippert would not have added any new, relevant information that was not already brought out during the cross-examination of Kilbride.

Likewise, although defendant offered his own affidavit in support of his claim that he was not properly advised on the sentencing consequences that he faced if he stood trial and lost, his affidavit only addresses advice that Gonek provided to defendant. Defendant also was represented by Holmes earlier in this case at the time the record shows that the prosecutor estimated that defendant could face a guidelines sentence of up to 62½ years. Because defendant does not address his consultations with Holmes about his sentencing guidelines, his offer of proof lacks relevant facts to support a claim of ineffective assistance of counsel. See *id*. Moreover, defendant has made no offer of proof regarding whether the trial court would have accepted a plea. See *Douglas*, 496 Mich at 592. Therefore, defendant has not shown a likelihood that he has additional evidence supporting his argument that his counsel was ineffective with regard to advising him on whether to accept a plea deal. See *Carbin*, 463 Mich at 600. Ultimately, then, we agree that defendant was properly denied an evidentiary hearing on his claims of ineffective assistance of counsel. See *Unger*, 278 Mich App at 216-217.

To the extent that defendant asks this Court to remand this matter for an evidentiary hearing when this Court earlier denied his motion to remand without prejudice, we decline to order the trial court to conduct an evidentiary for the foregoing reasons. See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995); *People v Simmons*, 140 Mich App 681, 685-686; 364 NW2d 783 (1985).

## C. SENTENCING

Defendant received five concurrent terms of 60 to 100 years for his five convictions of CSC-I. He argues that he is entitled to be resentenced because his sentences are unreasonable and disproportionate. We decline to require that defendant be resentenced.

This Court reviews all sentences for reasonableness. *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion" by imposing a sentence that is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (quotation marks and citation omitted). See also *Graham v Florida*, 560 US 48, 59; 130 S Ct 2011; 176 L Ed 2d 825 (2010). When a sentence is within properly scored guidelines, there is a nonbinding, rebuttable presumption that the sentence is proportionate. *Posey*, 512 Mich at 359. The defendant bears the burden of demonstrating that his or her sentence is unreasonable or disproportionate. *Id*. A defendant may overcome the presumptive proportionality of a within-guidelines sentence by "present[ing] unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (quotation marks and citation omitted).

In this case, the sentencing guidelines range for each of defendant's CSC-I convictions was 225 months to 750 months or life. Therefore, defendant's within-guidelines sentences of 60 years (or 720 months) to 100 years are presumptively proportionate. The trial court's reasons for its sentencing decision involve defendant's prior record of charges and the fact that defendant preyed on vulnerable victims in this case. Defendant argues that the court did not provide an adequate record of its reasons to aid appellate review. However, there is no requirement that a sentencing court expressly explain why a within-guidelines sentence is reasonable and proportionate. *People v Posey (On Remand)*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 345491); slip op at 4.

With regard to both reasonableness and proportionality, defendant primarily argues that his prior record contains mostly nonassaultive offenses. At the time of sentencing, defendant had seven pending charges for disorderly conduct and driving or vehicle offenses. He was on probation at the time of these offenses. His prior record also included 3 felonies and 11 misdemeanors, as well as a juvenile record. While much of defendant's record does consist of nonviolent offenses, there are some offenses that are assaultive in nature. In 2009, he pleaded guilty to domestic violence. In 2017, defendant received a probationary sentence for malicious destruction of personal property, a misdemeanor offense in which defendant fired three shots into the windshield of the victim's car as she was seated in the driver's seat. Defendant's record also does not appear to show successful treatment after he was incarcerated or sentenced, even for minor offenses.

Given the escalating seriousness of defendant's crimes, his poor record of rehabilitation, and the seriousness of the offenses in this case—which did involve vulnerable victims—defendant has not presented the unusual circumstances necessary to render his presumptively proportionate sentence disproportionate. See *Bowling*, 299 Mich App 552 at 558.

### III. DEFENDANT'S STANDARD 4 ISSUES

In his Standard 4 brief, defendant raises new arguments on ineffective assistance of counsel that were not included in his motion for a new trial, not addressed by the trial court, and not included in his motion to remand. Accordingly, these issues are not preserved for appellate review. See *Abcumby-Blair*, 335 Mich App at 227; *Heft*, 299 Mich App at 80. However, this Court will review claims of ineffective assistance of counsel for the first time on appeal to the extent that the existing record permits review. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

Defendant claims that both DE and NH lied in their testimony and that his counsel was ineffective for allowing them to commit perjury and not trying to impeach their testimony. He further claims that the prosecutor kept evidence regarding the lies that these witnesses told from the defense, which would have been exculpatory evidence. Defendant also faults the prosecutor for not taking steps to secure DE's phone, which was never provided to the police. We disagree with each contention.

The right to due process under US Const, Am XIV, requires that the prosecution not suppress material evidence favorable to the defense. *People v Fox (After Remand)*, 232 Mich App 541, 549; 591 NW2d 384 (1998), citing *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To prove a *Brady* violation, the defendant must show that "(1) the prosecution has

suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014).

Defendant does not explain what lies DE and NH told or how defense counsel could have done anything more to expose their possible perjury. The prosecutor offered testimony at trial that both women lied to the police early on in the investigation about how they met defendant and that they agreed to have sex with him for money. Defense counsel attempted to use that evidence to impeach the witnesses' credibility. Accordingly, defendant has not properly explained what more his attorney could have done to prove that the women were not credible witnesses.

Defendant also claims that the prosecutor withheld exculpatory evidence. Defendant seems to suggest that the prosecutor withheld evidence related to DE's and NH's testimonies that would have proved that they lied. In particular, defendant argues that the prosecutor should have informed the jury that DE refused to turn over her phone to the police when asked. The record does show that DE did not give her phone to police. The record also shows that police did not take steps to require that DE turn over her phone because they believed that they had enough evidence from defendant's phone. Additionally, NH allowed the police to access her phone. Given that the police had access to the contents of defendant's and NH's phones, it is apparent that any relevant information from DE's phone about her involvement with either defendant or NH would have been duplicative of evidence already produced. Defendant has therefore not shown that the prosecution suppressed exculpatory evidence. For this reason, defendant also cannot show that his counsel was ineffective for not pursuing this issue. See *Leffew*, 508 Mich at 637.

In his Standard 4 brief, defendant also includes as an issue that it was error for the trial court to refuse to hold an evidentiary hearing on his claim of ineffective assistance of counsel. However, defendant has waived further review of the issue by failing to properly address it in his brief. See *People v Kean*, 204 Mich App 533, 536; 516 NW2d 128 (1994). Moreover, as discussed previously, we find no error by the trial court in its decision to decline conducting an evidentiary hearing. Furthermore, we also find no grounds exist to allow defendant to conduct an evidentiary hearing on his claims of ineffective assistance of counsel raised for the first time on appeal. See *Matuszak*, 263 Mich App at 48.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Thomas C. Cameron
/s/ Adrienne N. Young

-10-